Palmer v. The People.

ORTIGAL N. PALMER, PLAINTIFF IN ERROR v. THE PEOPLE OF THE STATE OF NEBRASKA, DEFENDANT IN ERROR.

1. **Practice in Criminal Cases**: CHALLENGE OF JURORS. Under the provisions of the criminal code of 1873, it is not error to permit a juror to sit in a cause, who, although on oath says "he had an opinion and expressed an opinion," also says, he "could render an impartial verdict upon the law and the evidence." The record disclosing no basis for the opinion, it will be presumed that the court was satisfied that it was merely hypothetical, and not one calculated to bias the juror.

2. ———: EXHAUSTING PEREMPTORY CHALLENGES. A party waiving his right of peremptory challenge, cannot complain of the disqualification of a juror, known to exist at the time of the impaneling.

3. ———: SETTING ASIDE VERDICT. A verdict without evidence to support it, should be set aside; but if the evidence is conflicting, and the issues fairly submitted to the jury, the verdict should not be disturbed.

4. ———: ARGUMENTS OF COUNSEL. If an attorney for a prisoner voluntarily waives his right to argue the case to the jury, he cannot, after they have retired to consider their verdict, insist as a matter of right to have the jury recalled for the purpose of hearing such argument.

ERROR to the district court of Pawnee county.

The plaintiff in error was indicted at the October term, A. D. 1873, of the district court of Johnson county, with George W. Waldo, and Celeste Randall, for the murder of George G. Randall in March, 1873. A change of venue was granted, and the cause transferred to Pawnee county. The plaintiff in error made application to the court for a separate trial, which was granted, and the

cause tried at a special term of court held in Pawnee county during the month of February, 1874. The jury returned a verdict of manslaughter, and fixed the imprisonment of the plaintiff in error, in the penitentiary, at one year. The cause came to this court by writ of error. The trial in the court below occupied several days, and all the evidence contained in the record brought here, is comprised in a bill of exceptions, numbering one hundred and fifty pages. It is impossible to give anything more than the following brief statement of the evidence.

George G. Randall, the deceased, a resident of Johnson county, left his home on the 18th day of March, 1873, being last seen alive on that day by several witnesses, and in June following his body was found in a slough or ravine, some seven miles from his place of residence, and west thereof, in an advanced stage of decomposition, the flesh being nearly gone, and the skull bare. The body lay in a hole some two or three feet deep, one hand across, a gun and stick lying on the body, the skull detached, and part of the cranium broken away. The deceased had on clothing identified as that of his brother, and a pistol or revolver lay under his head. Evidence on the part of the state tended to show that the prisoner had criminal intimacy with the wife of the deceased, and that there had been a difficulty about the matter, the prisoner promising to remain away from Randall's house; that deceased was last seen alive by several of his neighbors, near his house, between eight and nine o'clock of the forenoon of March 18, 1873; that Waldo and the prisoner were both there in the afternoon, the former having borrowed a pistol of Embrie which he offered to return next morning, but did not return until the following week; that Mrs. Randall left the house that afternoon going with the prisoner and Waldo to Ellis's, a neighbor; that the prisoner and Waldo were seen near Palmer's house next day, asleep, or feigning to be so, beside a straw pile;

that no one at this time was at the house of the deceased; that next day after (March 20), a wagon track was noticed by one witness leading up the slough from the direction of Randall's house, by Smith's place, towards where Randall's body was afterwards found; that on March 23, search was made for Randall by his neighbors; that the floor was found to have been recently rubbed and scrubbed, and that there were wet spots and stains on the carpet; that a clean dress of Mrs. Randall's with stains on it, recently washed and yet wet, was found in a box of dirty clothes; that a place shaped like a human body was found in a straw stack near the house; that pants and some old clothes of the deceased, done up in a bundle, were found in a ravine near the house; that at the time the body was found, a stain was seen on the body of the shirt, with holes in the shirt having smooth and evenly cut edges; and that sometime after the disappearance of the deceased, Mrs. Randall and the prisoner left the country and went to Missouri where they were arrested. Knott Randall, a brother of the deceased, testified that deceased was not a very able bodied man, suffering from rheumatism in his hands, seldom walking anywhere, and that deceased was not in the habit of wearing his brother's clothes, but had done so two or three times. On cross-examination this witness testified that they had killed a hog at the house of deceased the day before; that deceased shot the hog at the stable, and that it was dressed at the house, though he could not recollect what clothes the deceased had on, or the dress worn by Mrs. Randall.

The evidence on behalf of the prisoner, given by himself, Mrs. Randall, Waldo, and Rossy Randall, a child seven years of age, was, in substance, that deceased got up early in the morning, ate no breakfast, but carried a note from Mrs. Randall to Palmer; that he was gone about two hours, and when he came back Palmer and Waldo were at the house; that they had a long talk about

Mrs. Randall's going away, that she told him that they could not get along together and that she was going away; that Palmer and Waldo left about noon, and shortly afterwards the deceased went and got his brother's black clothes and dressed himself in them; that he bade the children good bye, put a pistol in the inside pocket of his coat, got a bottle of powder, and a sack of shot, took his gun and started off, going northwest; that the child Rossy was sent for Palmer and Waldo, who came to the house, and took Mrs. Randall up to Ellis'; and the last seen of deceased alive, was when he started off in the manner stated. The mother of the prisoner testified that the prisoner came home before supper, did his chores, and after eating supper, that he and Waldo went off on their horses, not returning until nine o'clock, when they both went up stairs to bed. Two witnesses living two or three miles northeast of the place where the body of deceased was found, testified that they saw a man, dressed in a dark suit of clothes, on the 18th of March, in the afternoon, walking some distance from them in a southwesterly direction, that he went limping in his walk, and had something on his shoulder. They were not acquainted with the deceased.

The testimony of the medical witnesses, as to the cause of the fracture of the skull of the deceased, was conflicting, that of the state tending to show that it resulted from a blow given from without, and that of the defense, that it was caused by a gun shot, the gun being placed at the orbit of the eye, and discharged upwards.

*O. P. Mason and J. C. Watson*, for plaintiff in error.

I. The juror Baughn, was incompetent under the provisions of the statute passed and taking effect February 27, 1873. *Gen. Stat.*, 857.

II.   The court erred in not allowing the prisoner to argue his cause to the jury.   It is a fundamental principle in this state, that in criminal prosecutions the accused has a right to be heard by himself or counsel.

III.   The evidence is insufficient to sustain the verdict or justify a conviction; the verdict is contrary to law and the evidence.   Each fact which is necessary to the conclusion must be distinctly and independently proved by competent evidence. *Commonwealth v. Webster*, 5 *Cush.*, 295.   The testimony must be such as to satisfy the jury, beyond a reasonable doubt, that the prisoner is guilty of the charge alleged against him in the indictment.   *Hiller v. State*, 4 *Blackf.*, 552.   *State v. Thompson*, *Wright's R.*, 617.   *Sumner v. State*, 5 *Blackf.*, 579. *The State of Iowa v. Collins*, 20 *Iowa*, 86.   *Tompkins v. The State*, 32 *Ala.*, 573.

*J. R. Webster, Attorney General*, for the People.

I.   The objection taken to the competency of the juror Baughn, cannot be considered by this court for the reason that the bill of exceptions does not show his answer to interrogatories, touching the grounds of such opinion. It is not every crude and ill-founded opinion, that will render a juror incompetent.   *Criminal Code, Sec.*, 468. It was the province of the plaintiff in error, in preparing his bill of exceptions, to make the ground of the jurors opinion clearly appear.   In examining and passing the juror, the presumption is that the court below has done its duty.   *Scovern v. The State*, 6 *Ohio State*, 288. *Bethel v. Woodworth*, 11 *Ohio State*, 393.   *Broome's Legal Maxims*, 910.

II.   It was not error to refuse to recall the jury to hear argument.   The defendant may waive his right to be heard.   *Criminal Code, Sec.*, 478.   Sixth.

III.   While courts may set aside a verdict as against the weight of evidence, they will rarely disturb the finding of a jury upon the facts.   The refusal of the court to do so is not reviewable here, where there is any evidence to sustain the charge.   *Hurley v. The State*, 6 *Ohio*, 400. *State v. Cruise*, 16 *Mo.*, 391.   *Wolf v. The State*, 11 *Ind.*, 231.   *Giles v. The State*, 6. *Geo.*, 276.   *State v. Elliott*, 15 *Iowa*, 72.

MAXWELL, J.

The errors assigned in this case are as follows:

1.   The court erred in allowing J. B. Baughn to sit as a juror.

2.   The court erred in admitting certain testimony.

3.   The court erred in excluding certain testimony.

4.   The court erred in the instructions given to the jury.

5.   The court erred in refusing certain instructions.

6.   The court erred in not allowing the prisoner to argue his case to the jury.

7.   The evidence is insufficient to sustain the verdict.

The bill of exceptions, states that J. B. Baughn, one of the jurors, stated under oath, that he had an opinion and expressed an opinion, and was challenged for cause by the prisoner; and the said juror on being interrogated by the court, answered "that he thought he could render an impartial verdict upon the law and the evidence," thereupon the court overruled the challenge, to which the prisoner, by his counsel, excepted.

The act approved February 27, 1873, which was repealed by the criminal code taking effect Sept. 1, 1873, provided that "the formation or expression of an opinion or impression in reference to circumstances upon which any criminal action at law is based, or in reference to the guilt or innocence of the prisoner, or a present opinion or impression in reference thereto, shall not be sufficient

ground of challenge for principal cause to any person, otherwise legally qualified, to serve as a juror, upon the trial of such action; *provided* the person proposed as a juror, who may have formed or expressed, or has such opinion or impression as aforesaid, shall declare on oath that he verily believes he can render an impartial verdict, according to the evidence submitted to the jury, on such trial, and that such previously formed opinion or impression will not bias or influence his verdict; *and provided* the court shall be satisfied that the person so proposed as a juror does not entertain such a present opinion as would influence his verdict as a juror." *General Statutes*, 857.   On the 4th day of March, 1873, an act to establish a criminal code was passed, taking effect September 1, 1873.   It contained a provision repealing all acts inconsistent therewith.   Section 468 of this code provides that "it shall be good cause for any person called as a juror on the trial of any indictment, that he has formed or expressed an opinion as to the guilt or innocence of the accused; *provided*, that if a juror shall state that he has formed or expressed an opinion as to the guilt or innocence of the accused, the court shall thereupon proceed to examine on oath such juror, as to the ground of such opinion; and if it shall appear to have been founded upon reading newspaper statements, communications, comments, or reports, or upon rumor or hearsay and not upon conversation with witnesses of the transaction, or reading reports of their testimony, or hearing them testify, and the juror shall say on oath, that he feels able, notwithstanding such opinion, to render an impartial verdict upon the law and the evidence, the court, if satisfied that such juror is impartial and will render such verdict, may in its discretion admit such juror as competent to serve in such case."

This act excludes all persons offered as jurors who have formed or expressed an opinion in reference to the guilt

or innocence of the accused, unless such opinion has been founded upon reading newspaper statements, communications, comments, or reports, or upon rumor or hearsay, and evidently applies to cases where the opinion is merely hypothetical, and excludes all cases where there is bias or a decided opinion. The juror, Baughn, stated that "he had an opinion and expressed an opinion." The word "opinion" in this connection is frequently used to denote a mere impression, and appears to have been so used in section 468 of the criminal code, above quoted. It is the right of a party accused of crime to be tried by a fair, unbiased jury, so that their minds may be open to those impressions, which the testimony and the law of the case ought to make; but it would be difficult in this age, to find an intelligent man that does not read the newspapers, and from their statements perhaps form an impression or opinion. *Cooper v. The State*, 16 *Ohio State*, 333. If the opinion is merely hypothetical, he is a competent juror; but if the juror shows the slightest bias, he ought to be rejected, notwithstanding he might be willing to swear that he feels able to render a fair and impartial verdict according to the law and the evidence. In this case there is nothing before us to show upon what the opinion of Baughn was based, or whether in fact it was more than a mere impression.

There is nothing in the bill of exceptions showing that plaintiff in error used any of his peremptory challenges. Under the code, a person charged with murder is entitled to sixteen peremptory challenges, against six on the part of the state. Certainly a party on trial cannot complain that one of the jurors, sitting in the case was disqualified, he knowing the fact at the time of impaneling the jury, and waiving his right of peremptory challenge.

The next alleged error, that will be noticed, is that there is not sufficient evidence to sustain the verdict.

The evidence is all embodied in the bill of exceptions. At common law, a new trial could not be granted in any case of treason or felony, but the practice in most of the states of the Union, has been to grant a new trial, in case of conviction, with consent of the prisoner, in any case where it is apparent that a fair and impartial trial has not been had. The code provides for granting a new trial on motion of the defendant, after conviction, on certain specified grounds, one of which is that the verdict is not sustained by sufficient evidence; and it is the duty of the court, where the verdict is clearly without evidence to sustain it, to set it aside and grant a new trial. But if the evidence is conflicting, and the case has been fairly submitted to the jury, the verdict will not be disturbed. So much depends on the manner and appearance of a witness, while giving his testimony, that the question of his credibility must be left to the jury, and a reviewing court will not, in such a case, say from an examination of the testimony, that the verdict is erroneous. That the crime charged in this case was committed at the time and place charged in the indictment, we think is clearly shown, and there is testimony connecting the plaintiff in error with the commission of the offense, as strong as is often found in this class of cases.

The bill of exceptions shows that the counsel, both for the prisoner and the people, by agreement, submitted the case to the jury on the instructions of the court, and without argument. This they had a right to do, and having done so the prisoner's counsel could not afterwards insist, as a matter of right, to have the jury recalled that they might argue their case.

Of the other errors assigned, after a careful examination, we find nothing of which the prisoner can complain. The evidence certainly would have warranted the jury in imposing a much more severe penalty than

has been done by their verdict. The judgment is therefore affirmed.

JUDGMENT AFFIRMED.

CHIEF JUSTICE LAKE, concurred. GANTT, J., before whom the case was tried in the court below, did not sit.