[No. 1424.]

THE STATE OF NEVADA, PLAINTIFF AND RESPONDENT, *v.* ALICE M. HARTLEY, DEFENDANT AND APPELLANT.

1—CONSTITUTIONAL LAW—NUMBER OF GRAND JURORS—CHALLENGING JURORS—HOMICIDE—VIEW OF PREMISES BY JURY—INSANITY— INSTRUCTIONS.—Section 8 of article I. of the constitution declares: " No person shall be held to answer for a capital or other infamous offense  *  *  *  except on presentment or indictment of a grand jury." *Held,* that, when the people adopted these provisions of the bill of rights, they had in view a grand jury as it existed under the common law and the statutes at the time the constitution was adopted: *Held, further,* that the acts of the legislature of 1893, providing that ten persons shall constitute the grand jury, and that eight of the number may find an indictment, are unconstitutional.

2.—Under the common law, the statutes, and constitution, the defendant may waive his objections to the qualifications of jurors; and if he fail to challenge before the jury is completed, knowing of the disqualification, he waives his objections, and is estopped from demanding, as matter of right, a new trial on the ground of such disqualification; and, in contemplation of the constitution, he has not in such case constitutional grounds for the objection that he has not been tried by a constitutional jury.

3.—On appeal a party cannot complain of the ruling of the court in denying his challenge to a juror for cause if it appear that, when the jury was completed, his peremptory challenges had not been exhausted.

4.—A view of the premises is not taking evidence in the case. It is means provided by the statute to enable the jury more satisfactorily to weigh the evidence given in court. When the action of

the court is taken and the view is made on motion of the defendant, and no request or expression of a desire on his part to be present was made, his absence is not ground for new trial, nor is the absence of the judge legal cause of complaint.

5.—*Held*, that the accused is presumed to be sane until the contrary is shown; and, where there is no evidence tending to show insanity of the defendant at the time of the commission of the alleged offense, the action of the court in refusing to give instructions asked for by the defendant or in giving instructions of its own motion on the subject of insanity will not be reviewed by the appellate court.

6.—The court instructed the jury: "In considering the weight and effect to be given to her evidence, in addition to noticing her manner and the probability of her statement, taken in connection with the evidence in the case, you should consider her relations and situations under which she gives her testimony, the consequences to her relating from the result of the trial, and all the inducements and temptations which would ordinarily influence a person in her situation. You should carefully determine the amount of credibility to which her evidence is entitled. If convincing and carrying with it a belief in its truth, act upon it; if not, you have a right to reject it." *Held*, correct.

7.—The court instructed that if the defendant shot at the deceased with intention to kill him, and not in necessary self-defense, then certain facts enumerated in the instruction would not constitute any defense to the shooting. *Held*, as applied in this case, that the instruction was not misleading, nor prejudicial to the defendant, because it only recited a part of the facts relied upon by defense, nor was it a charge upon a matter of fact.

8—DEFENSE—INSANITY—RULES GOVERNING.—See opinion.

APPEAL from judgment on verdict of guilty of murder in second degree and order denying motion for new trial and motion in arrest of judgment, from District Court, Washoe county; *A. E. Cheney*, District Judge.

The facts sufficiently appear in the opinion.

*Robert M. Clarke* and *Goodwin & Dodge*, for Appellant:

Defendant herein has been deprived of her liberty without "due process of law," in that she was indicted by an illegal grand jury. The law (Stats. 1893, pp. 31–43) prescribes that twelve persons shall be selected from the jury list who shall be summoned to appear as grand jurors, and out of the number summoned the court shall elect ten persons who shall constitute the grand jury, etc., etc. In this case twenty-four persons were selected and summoned, and seventeen out of said twenty-four, instead of ten out of twelve, comprised the illegal grand jury that found the indictment herein.

"No person shall be tried for a capital or other infamous crime, * * * except on presentment or indictment of a grand jury, * * * nor be deprived of life, liberty or property without due process of law." (Art. I., sec. 8, Constitution.) "Due process of law" requires that a party shall properly be brought into court. (*Wright* v. *Cradlebaugh,* 3 Nev. 310, 316.)

There is no constitutional provision prescribing the number of persons required to constitute a grand jury. At common law, a grand jury may consist of any number between twelve and twenty-three. (*State* v. *Davis,* 2 Ged. 153.) But frequent statutory departures from this rule have been made. Thus, in Florida (Act of February 25, 1875), and in some counties in Alabama (Sess. Acts 1878, 1879, p. 204), fifteen was fixed as the proper number. (*Keech* v. *State,* 15 Fla. 591; *Cream* v. *State,* 70 Ala. 18; *Thompson* v. *State,* 70 Ala. 26.) In Maine the number was originally thirteen, but was reduced to eleven. (*State* v. *Symons,* 36 Me. 128; Rapalje's Crim. Proc., sec. 66.) In *Reynolds* v. *U. S.,* 98 U. S. 145, one assignment of error on appeal was: "Is the indictment bad because found by a jury of less than sixteen persons?" (*Hularde* v. *California,* 110 U. S. 232; 8 Grey, 329; 1 Idaho, 560; 30 Wis. 149; 61 Ala. 205; 22 Ark. 210; 20 Fed. Rep. 237; 33 Miss. 356; 30 Mo. 600; At. Rep. 1110 (*State* v. *Lee*); 11 Richardson, S. C. 581–9; 3 Utah, 488.)

The jury was not a good jury under the constitution of Nevada. Seven of the jurors were prejudiced against the defendant, and were disqualified under the common law, and under the constitution and statutes of Nevada. "The term 'jury,' as used in the constitution, means twelve competent men who are free from all the ties of consanguinity and all other relations that would tend to make them dependent on either party. It means twelve men who are not interested in the event of the suit, and who have no such bias or prejudice in favor or against either party as would render them partial to either party." (Const. Nevada, art. I., sec. 3; *State* v. *McClear,* 11 Nev. 39, 46.) "A jury for the trial of the cause is a body of twelve men—upright, well qualified and lawful men, disinterested and impartial." (11 Nev. 60.)

The jury was in fact no jury. (Thompson on Trials, sec.

116, note 1; Thompson and Merriman on Juries, sec. 223, note 1, p. 241; 6 Baxter (Tenn.) 466.)

The right to have a constitutional jury cannot be waived by defendant or defendant's counsel. (Const., art. I., sec. 3; 11 Nev. 39, 46, 60, 68; 68 Cal. 623, 632; 17 Ill. 325; 18 Johnson, 217; 18 N. Y. 128, 135, et seq.; 1 Neb. 385; 2 Ohio St. 296; 16 Ind. 496; 16 Ark. 601; 61 Ga. 639; 17 Ark. 298; 80 Cal. 538.)

The juror Johnson was disqualified, having formed and expressed an unqualified opinion concerning the guilt of the defendant. (Gen. Stats., secs. 4220, 4596; 12 Eng. 354, 355 and note; Thompson & Merriman, secs. 215, 217, note 1; 11 Nev. 39, 64, 68; 3 Nev. 409, 426, 431.)

The fact that a disqualified juror believes he could lay his opinion aside and render a fair verdict is not material. (Thompson & Merriman on Juries, sec. 220; 40 Cal. 78; 29 Cal. 635.)

The test is not what the person's mind will be after he has heard the evidence, but what it is before he is taken as a juror. The contrary rule which prevails in New York (53 N. Y. 164; 80 N. Y. 484) depends upon a statute and is questioned. (Thompson & Merriman on Juries, 222, 223.)

It is immaterial what the source of opinion is. (Thompson on Trials, sec. 78, p. 78 and note 2; 74 N. Y. 277, 283.)

An opinion which requires evidence to remove will disqualify. (Thompson on Trials, sec. 80; 11 Cal. 68; Polk v. State, 45 N. H. 165.)

A preference in case the evidence were evenly balanced will disqualify. (Thomp. on Trials, sec. 73, p. 64; Chicago R. R. Co. v. Alder, 56 Ill. 345; Chicago R. R. Co. v. Button, 66 Ill. 347; 73 Ill. 494; 98 Ill. 472; 42 Ohio St. 596.)

Defense of insanity should not be looked upon with disfavor. (State v. Lewis, 20 Nev. 349.)

Instructions must be applicable to the particular case. (20 Nev. 237, 349, 351.)

The court erred in denying defendant's instruction No. 1. It was given verbatim in State v. Lewis, 20 Nev., supra. Also, Laws on Crim. Defense, p. 285, 288; 8 Abbott's Prac. N. S. 57, 72, 73, 95; 7 Abbott's N. S. 321.

The court erred in denying instruction No. 6 by defendant.

(*State* v. *Lewis, supra*; 2 Laws on Crim. Defense, *supra*; 8 Abbott's Prac. N. S. 57, 95, 96, 100.)

The court erred in denying the request of defendant and in giving the general charge, in effect, that a doubt of defendant's sanity was not sufficient; that her insanity must be established by a preponderance of evidence. (Thompson on Trials, secs. 2525, 2526; 40 Ill. 358; 66 Ind. 94, 106; 25 Kan. 213; 38 Ga. 507; Gen. Stats. 4565-7.) But it is decided to the contrary and the court's action is supported by *State* v. *Lewis*, 20 Nev. *supra*.

The court erred in charging the jury specially concerning the testimony of defendant. Under the laws of Nevada defendant is a competent witness in her own behalf. (Gen. Stats., sec. 4562; 19 Nev. 135, 141; 19 Nev. 290; 16 Nev. 120, 126; Thomp. on Tr., sec. 2446; 62 Wis. 705; 105 Ind. 117, 123; 107 Ind. 154; 20 Nev. 333; 16 Nev. 120, 126.)

It is error to enjoin upon the jury as a duty to consider the interest of the accused. (96 Ind. 461; 56 Ind. 179.)

The jury cannot reject defendant's evidence unless contradicted by other evidence or the circumstances of the case. (*Buckley* v. *State*, 62 Miss. 705, 706.)

The court erred in reciting a portion of defendant's testimony and in charging that "the effect of such facts, to wit: if you believe them true, each and all of them, or any of them, constitute (as a matter of law) no legal excuse or justification." (*State* v. *Bond*, 1 Nev. 33; *State* v. *Ah Hong*, 7 Nev. 148, 152; *State* v. *Fergeson*, 9 Nev. 118; Wharton's Crim. Ev., secs. 337, 338, 340; 16 Nev. 416; 2 Laws on Crim. Defense, pp. 416, 422; *State* v. *Smith*, 53 Mo. 267; 46 Mo. 414; 59 Ga. 249; Thomp. on Tr., secs. 2281, 2287; 9 Allen, 276; 49 Cal. 174, 181; 75 N. C. 275; 65 Cal. 568; 23 Tex. 195, 202; 43 N. H. 224; 85 Vt. 308; 40 Conn. 139; 17 Mich. 9; 32 Mich. 1.)

The court erred in permitting the jury to view the *locus in quo* of the homicide without the presence of the judge and jury. (68 Cal. 623, 630; 71 Cal. 606; 74 Cal. 569; 80 Cal. 538, 541; 53 Cal. 60; 42 Tex. 444; 30 Ark. 328, 348; 24 La. Ann. 46; 5 Neb. 32, 35, *contra* 20 Kan. 311, 324; 8 Or. 214, 217.)

The judge must accompany the jury. (74 Cal. 569, 570; Thomp. on Tr., sec. 884, p. 674; 61 Wis. 184.)

It was error to permit John Caughlin and L. Jameson to accompany the jury.  (Thomp. on Tr., *supra.*)

The objection is not waived nor is the error cured by defendant's silence.  (Thomp. on Tr., sec. 885; *Bostock* v. *State*, 61 Ga. 635, 639; *State* v. *Lopez*, 15 Nev. 412.)

The court erred in excluding the testimony to prove efforts of defendant to leave Reno, and to show defendant's property and calling.

At most defendant is guilty of manslaughter.

*Robt. M. Beatty*, Attorney-General, and *W. E. F. Deal*, of Counsel, for Respondent:

After full statement of the facts and argument thereon:

There was no relevant, material or competent testimony of any fact or circumstance of anything which occurred prior to the 26th day of July, 1894.  All the testimony in the record as to matters prior to the 26th day of July was as to matters that were no part of the *res gestæ*, and such testimony cannot be considered except for the purpose of determining whether such fact or thing has any bearing upon any defense made by the defendant, and the testimony as to such matters was admitted solely on account of the statement that her defense was that she killed deceased in necessary self-defense and that she was insane at the time she shot him.  There was no testimony even tending to show that the defendant was insane, but, on the contrary, it appeared from the testimony that she was in full possession of her faculties at the time and that she took the law into her own hands fearless of consequences and boasting of what she had done.

An error in charging the jury as to a matter about which there was no evidence could not prejudice the defendant. (*People* v. *Wheeler*, 65 Cal. 77.)

The question of the insanity of the defendant was, however, submitted to the jury by the court below by instructions as to the law of insanity, which are in accordance with the decisions of this court.  The instructions asked by the defendant which were correct were embodied in the instructions of the court, and those asked by defendant and refused by the court have been held by this court to be incorrect. (*State* v. *Lewis*, 20 Nev. 333; see also decision of Judge Cheney annexed hereto.)

The grand jury which indicted defendant was not selected under Stats. 1893, pp. 31–43, the district court holding that law to be unconstitutional, as all the district courts of this state, without exception, have held. The grand jury which found the indictment was constituted as required by the laws in force at the time of the approval of the act of 1893. The constitution does not provide what number of persons shall constitute either a petit or grand jury. This court, in *State* v. *McClear*, 11 Nev. 45, approved the case of *Dowling* v. *State of Miss.*, 5 Smede & Marshall, 682. The reason of this court, in the case of *State* v. *McClear*, against the jury law of 1875 applies with equal force to the grand jury law of 1893. This court held the law of 1875 unconstitutional because it destroyed or impaired the right of trial by jury as it existed according to the course of common law. (*State* v. *O'Flarity*, 7 Nev. 157; *State* v. *Cohn*, 9 Nev. 189; *State* v. *McClear, supra*, 59, 61.)

The legislature has no power under the constitution to deprive the defendant of his right to have a criminal charge against him investigated by a grand jury of less than seventeen persons, nor to be deprived of the right to have such charge ignored unless twelve of the grand jurors concur in the indictment. See decision of Judge Cheney in denying motion for new trial, *prox.*, and *State* v. *McClear, supra.*

The jury which tried the defendant was composed of twelve good and lawful men accepted by defendant after a careful examination by her counsel. Upon examination of the jurors on their *voire dire* six of them stated that they had formed or expressed unqualified opinions as to the guilt or innocence of the defendant. The defendant accepted these six jurors, notwithstanding their testimony, and by her counsel she now claims that she did not have a fair trial before a good jury. She cannot be heard to complain after the verdict of such a jury. She had the right to challenge these jurymen and cannot now be heard to say that they were prejudiced against her. A defendant in a criminal case cannot speculate as to such matters and complain when the result proves contrary to expectations.

The defendant did not exhaust all her peremptory challenges, and no legal injury resulted from denying her chal-

lenge to the juror Johnson as she could have discharged him by exercising her statutory right.

The affidavit touching Mr. Johnson's statement before he was called as a juror is traversed by his affidavit. The affidavit used in behalf of defendant upon motion for new trial was insufficient, as it did not show that defendant and her attorneys were ignorant of the matters affecting the juror's competency. (Thompson & Merriam on Juries, pp. 304, 305, and note.)

The refusal of the court to allow the challenge of the juror Johnson is not one of the grounds for which a new trial can be granted. (Gen. Laws, sec. 4308; see, also, *State* v. *Marks*, 15 Nev. 33.)

The instructions of the court were correct. If there was any error, it was in favor of defendant. None of the instructions assumed any fact to have been established. See decision of Judge Cheney denying motion for new trial and authorities cited, *prox.*

The instructions of the court fully covered the case and were in accordance with the decisions of this court. No judge could more strictly have followed the principles of law applicable to this case as laid down by this court than was done by the learned judge who tried this case.

It is now claimed on the part of appellant that it was error to permit the jury to visit the premises without the presence of the defendant. The order of the court was made under sections 4257, 4258, Gen. Stats. These sections have been construed by this court in the case of *State* v. *Lopez*, 15 Nev. 411, against appellant's contention, See, also, *Jones* v. *State*, 38 N. E. 80, 81; 19 Minn. 211; 78 Ky. 639; Rice on Ev., vol. III. (Crim.) pp. 175–180; Gen. Stats., sec. 4308.

Defendant did not ask to be allowed to accompany the jury, and it is extremely doubtful whether a defendant has any right to accompany the jury. All the jury is sent to do is to view the premises in the custody of the sheriff. In this case no one accompanied them except the sheriff. The sheriff's deputies were with them, but they went in their official capacity and were in law but one person.

The verdict in this case was fully supported by the evidence. In fact, no legal defense was made by the defendant. During the trial evidence entirely irrelevant was admitted

on behalf of the defendant, which could not but have resulted favorably to her in its effect upon the jury. This, together with the sex and condition of the defendant, resulted in a verdict less severe than the law and evidence justified, coupled with a recommendation to the mercy of the court, which recommendation received due consideration. There has been a trial in this case, and a merciful one, under the law and the evidence, in its result to the defendant.

The defendant is not corroborated in her story by any one, nor by any circumstance in the case. On the contrary, her account is so utterly improbable as to destroy itself. This court will not disturb the verdict of a jury after a denial of a motion for new trial by the court which tried the case where the evidence is conflicting, and much less will it do so where the evidence is all one way and consistent only with the guilt of the defendant.

FROM DECISION OF JUDGE CHENEY ON MOTION IN ARREST
OF JUDGMENT.

No question is made about the validity of the grand jury, except that the legislature in 1893 reduced the number from seventeen to ten, and enacted that the concurrence of eight instead of twelve should be sufficient to find an indictment (Stats. 1893, pp. 31, 43, 62), and the grand jury which indicted the defendant exceeded that number. Unless this act of the legislature is constitutional the motion must be denied.

At common law a grand jury could consist of any number not less than twelve or more than twenty-three, but no bill could be found, unless at least twelve agreed thereto. An indictment found by any less number was a nullity. (1 Chitty's Crim. Law, 306; 2 Hale Pleas Cr. 161; 4 Black. Com. 306; 1 Wharton Crim. Law, sec. 465; 1 Bish. Crim. Prac. 854; Proff. on Jury Trial, sec. 45; Thomp. & Mer. J. T., sec. 464, note 1; *Com* v. *Wood*, 2 Cush. 149; *People* v. *Hunter*, 54 Cal. 70.)

Under the territorial legislation of Nevada, a grand jury consisted of seventeen, and twelve must consent to find an indictment. (Stats. 1861, pp. 139, 458, 459.) In the constitutional convention of 1864 a proposition to authorize prosecution by information, "without the intervention of a grand jury, unless the legislature should otherwise provide,"

was defeated.    (Const. Deb. & Proc., pp. 60, 196, 199, 774, 775.)    When the people of this state adopted a constitution and declared in section 8, article VII., that "no person shall be tried for a capital or other infamous offense,   *   *   * except on presentment or indictment of a grand jury," did they mean such a grand jury as was then known, both by common and statutory law, or such a one as the legislature might see fit to create?    The answer is manifest.    The right of trial by jury is secured by the same article of the constitution.    "This provision," says the supreme court of this state, "has reference to the right of trial by jury *as it existed at the time of the adoption of the constitution.*"  (*State* v. *McClear*, 11 Nev. 39.)

It is therefore believed that the legislative attempt of 1893 to change the grand jury is unconstitutional and void. (*State* v. *English*, 12 So. Rep. 689; *People* v. *Hunter*, 54 Cal. 70; *Harding* v. *State*, 22 Ark. 211; *State* v. *Clayton*, 11 Rich. So. Car. Law, 590.)

The legislation of 1893 being unconstitutional it did not repeal the law which it attempted to amend.

EXTRACT FROM JUDGE CHENEY'S DECISION DENYING MOTION
FOR NEW TRIAL.

If a defendant willfully takes his chances with a juror, he must abide the result, else he could always get a new trial by simply refusing to exercise his right.    (*State* v. *Anderson*, 4 Nev. 265–279.)

The taking of a view of the premises is objected to beause neither the defendant, judge or clerk were present.    Admitting that some authorities seem to hold the contrary, the weight of reason and authority is that the right of defendant to be present with judge and clerk when a view is had, if such a right exists, is statutory and not constitutional, and, whatever the right may be, it is one which the defendant may and does waive, where the action is taken upon his request and without objection or protest against the manner in which it was done.    (17 Nev. 365; 6 Crim. Law, 182; 105 Ind. 290; 4 N. E. Rep., p. 70; 35 Pac. Rep. 706; 34 Pac. Rep. 1103; 20 Kan. 311; 15 Nev. 407; 8 Or. 217; 47 Ohio St. 234; 24 N. E. Rep. 368; 27 Iowa, 503; 19 Cal. 426; 80 Cal. 538; 5 Neb. 32; 15 Or. 262; 32 N. W. 849.)

The charge upon the question of insanity, and the burden

of proof upon that issue, is substantially the same as that in *State* v. *Lewis*, 20 Nev. 333.

The instruction respecting the evidence of the defendant, to which objection is now made, has been three times approved by this supreme court. (15 Nev. 51; 16 Nev. 310; 19 Nev. 171.)

The existence of pregnancy was not shown to be a predisposing cause to mental instability, and, even if it had been shown to be such, that did not dispense with proof that insanity in fact did exist at the time of the homicide. (*Sawyer* v. *State*, 35 Ind. 80; 2 Law Crim. Defense, 790.)

No person, expert or otherwise, testified to the mental unsoundness of defendant before or at the time of the shooting. If there was no evidence of insanity, the failure to further instruct was not error. (65 Cal. 77.)

Complaint is also made because the court charged the jury that if certain things were believed by them to be true they did not constitute any legal justification for firing the first shot. In this instance, as in many others, the objection is fully answered by the decisions of this supreme court. (*State* v. *Anderson*, 4 Nev. 266.)

Finally, * * * to permit an individual to take the life of another, not in necessary self-defense, because he believed that another had done that which merits extreme punishment, would be to destroy a principle of law which lies at the very foundation of all order, society and government.

By the Court, Bonnifield, J.:

On the 26th day of July, 1894, the defendant, Alice M. Hartley, killed M. D. Foley, in her rooms, in the building of the Nevada bank, in the town of Reno, Washoe county, Nevada, by shooting him with a pistol, for which she was indicted for the crime of murder on the 3d day of August, 1894, by the grand jury of that county. Subsequently she was tried in the district court of said county, found guilty of murder in the second degree by the verdict of the trial jury, and by the judgment of the court was sentenced to serve a term of eleven years in the state prison. The defendant appeals from the judgment of the district court, and from the order of the court denying her motion for new trial. The record is replete with objections made and exceptions

taken by the defendant to the proceedings and rulings of the trial court from the beginning to the termination of the case.

1. *The Grand Jury:*  In the Statutes of 1893 (page 31) it is provided that twelve persons shall be summoned to appear as grand jurors, and out of the number so summoned the court shall select ten persons, who shall constitute the grand jury.  By the same statutes (page 43) it is provided that an indictment shall not be found without the concurrence of eight grand jurors.  The grand jury to which objection is made was selected and impaneled under the provisions of the General Statutes (sec. 3795), which require that twenty-four persons shall be selected and summoned, and of this number the court shall select seventeen persons to constitute the grand jury.  Sections 4106 and 4107 require the concurrence of twelve grand jurors to find an indictment.  The contention of the defendant is that the grand jury should have been organized in pursuance of the provisions of the Statutes of 1893, and, not having been so organized, that it was an illegal body.  At common law, the grand jury may consist of any number between twelve, as the minimum, and twenty-three, as the maximum, and an indictment found without the concurrence of at least twelve grand jurors is invalid.

As to these common-law rules, all the elementary writers on the subject are agreed, and they are recognized by a great number of the courts of last resort.  Of these we cite 2 Hawk. P. C. 295; Hale, P. C. 161; Co. Litt. 156b; 1 Chit. Cr. Law, 306; Forsyth, Jury Tr. 178; Cooley, Bl. 304; Story, Const., sec. 1784; *King* v. *Marsh,* 1 Lead. Cr. Cas. 260; *State* v. *Davis,* 2 Ired. 153; *Com.* v. *Wood,* 2 Cush. 149; *Low's Case,* 4 Greenl. 439; *Hudson* v. *State,* 1 Blackf. 317; *People* v. *Hunter,* 54 Cal. 65; *State* v. *Symonds,* 36 Me. 128; *State* v. *Ostrander,* 18 Iowa, 453.

"No man can be convicted at the suit of the king of any capital offense unless by the unanimous voice of twenty-four of his equals and neighbors; that is, by twelve at least of the grand jury in the first place assenting to the accusation, and afterwards by the whole petit jury of twelve more finding him guilty upon his trial."  (Cooley, Bl., 3d ed., 304.)

At the time of the adoption of the constitution of Nevada, wherein it is declared, "No person shall be tried for a capital

or other infamous offense   *   *   *   except on presentment or indictment of a grand jury " (art. I. sec. 8), the provisions of the General Statutes (secs. 3795, 4106, 4107) which are declaratory of the common law were in force, being enacted by the territorial legislature of 1861. We, therefore, conclude that, when the people of this state adopted this constitutional provision, they had in view a " grand jury," as it existed at common law and under the statutes at the time of the adoption of the constitution. It is so held by this court with reference to the right of trial by jury in construing the third section of the same article of the constitution. (*State* v. *McClear,* 11 Nev. 39.) The reasoning in that case is applicable to the question at bar.

Defendant's counsel cite a great number of authorities to the effect that a grand jury may consist of a less number than twenty-three, but we are not referred to any authority holding that the number may be less than twelve, or that less than twelve can find an indictment under the common law or constitutional provision similar to ours. The authorities cited are not in point. So, waiving all question as to how the objection to the grand jury should have been raised, or whether it was properly raised by the various motions and objections made in the case, we are of the opinion that the district court did not err in holding that the said Statutes of 1893 are unconstitutional, and that the grand jury which found the indictment was a legal body.

2. *The Trial Jury:* The defendant's counsel urge as objections to the trial jury that " seven of the jurors were prejudiced against the defendant, and were disqualified under the common law and under the constitution and statutes of Nevada," and that " the right to have an impartial—that is, a constitutional—jury cannot be waived by the defendant, much less by the defendant's attorneys." Their objections go to the jurors Kinney, Coffin, Haish, Palmer, Fulton, Bryant, and Johnson. In answer to questions asked by defendant's counsel touching their qualifications as jurors, several of them, each, frankly answered that he had formed an unqualified opinion as to the guilt or innocence of the accused. Under this state of facts, the defendant and her counsel failed to challenge any of the six jurors first above named, but accepted them without objection.

It is now urged by counsel with great earnestness and ability that, by reason of the disqualification of these jurors, the defendant did not have a fair and impartial trial—a trial by jury as guaranteed by the constitution. This contention will not stand the test of reason and authority. At the time of the adoption of the constitution of this state, the manner of impaneling trial jurors, and the mode of determining their qualifications, and the right of the defendant to waive his objections to the qualifications of the jurors, and the consequences of such waiver under the statute and common law, were well understood.

*The Common Law:* "When the taial is called on, the jurors are sworn as they appear to the number of twelve, unless they are challenged by the party. Challenges may be here made on the part of the king or on the part of the prisoner, either to the whole array or to the separate polls, for the very same reason that they may be made in civil cases." (4 Cooley, Bl., 3d ed., 350; 2 Hale, P. C. 293.) "No juror can be challenged without consent after he hath been sworn either in criminal or civil cases, unless it be for some cause which happened since, he was sworn." (Bac. Abr. "Juries," 365.) "If a party have cause of challenge, and know of it in time enough before trial, if he do not challenge he shall not have a new trial." (Id. 366.)

*The Statute:* By the statute enacted in 1861, and in force at the time our constitution was adopted, it was provided that "a challenge to an individual juror must be taken when the juror appears, and before he is sworn; but the court may, for good cause shown, permit it to be taken after the juror is sworn, and before the jury is completed." (Gen. Stats., sec. 4214.) This statute is confirmatory of the above common-law rules.

From the citations it is clear that, both under the common law and the statute existing at the time the constitution was adopted, a defendant could waive an objection to a juror, and that he did waive it unless the challenge was taken prior to the jury being completed; and especially was this the case when the ground of challenge was then known. As already noted, it was the right of trial by jury as it then existed that the framers of the constitution provided should remain inviolate forever, and there is no reason to suppose they intended

any change in the rule as to waiver. These views may be fortified by reference to the decided cases.

*The Decisions:* In the case of the *State* v. *Pritchard,* 16 Nev. 101, in considering the above section (4214) of the statutes, the court says: "The state, as well as the defendant, is required to interpose its challenges before the jury is completed. This provision of the statute must be complied with. Whenever it appears from the examination, upon his *voir dire,* that a juror is disqualified by reason of the existence of any fact which is made the ground of challenge, the juror must be challenged, as specified in the statute; otherwise the party, whether the state or the defendant, will be considered as having waived the right of challenge." "If a defendant accept a juror without objection whom he knows to have formed or expressed an unqualified opinion, he cannot after verdict raise this objection. If he willfully take his chances with such juror, he must abide the result." (*State* v. *Anderson,* 4 Nev. 265; *Bronson* v. *People,* 32 Mich. 34.) "The constitution secures to an accused person the right to be tried by an impartial jury, and the legislature has no power to deprive him of such right; but it can regulate its administration by determining and declaring when and how a juror's partiality shall be ascertained." (*State* v. *Marks,* 15 Nev. 33.)

Not only must the defendant make his objections and take his challenges before the jury is completed, as appears from the above authorities, but the particular ground of challenge must be stated. (*State* v. *Squires,* 2 Nev. 230; *State* v. *Raymond,* 11 Nev. 106; *State* v. *Gray,* 19 Nev. 212; *State* v. *Vaughan* (decided at the last term of this court), 22 Nev. 285.)

The authorities cited by counsel are cases mainly in which the courts had under consideration the rights of the defendant where the discovery was made after trial that a disqualified person had sat on the jury, and in cases where the juror was challenged for cause, and his challenge denied by the lower court. Such authorities are not in point in this case as to these six jurors, for the defendant was fully informed of the alleged disqualification before trial, and before the jury was completed, and no objection was raised and no challenge taken to any of them.

It is therefore evident from the great weight of the authori-

ties, and from the statute and common law, that a defendant can waive his objections to the qualifications of jurors, and if he fail to challenge before the jury is completed, knowing of the disqualification, he is estopped from demanding, as matter of right, a new trial on the ground that the jury were not *omni exceptione majores,* and that, in contemplation of the constitution, he has not in such case, after verdict, constitutional ground for the objection that he has not been tried by a "constitutional jury."

3. *Juror Johnson:* The juror Johnson was challenged upon the ground, as it is alleged, "of having formed an unqualified opinion as to the guilt or innocence of the defendant." The challenge was denied, and exceptions taken. The ruling of the court denying the challenge is assigned as error. When the jury was completed, the defendant had not exhausted her peremptory challenges, but had one left, which she did not use at all. In Thompson on Trials (section 115) it is said: "The sound and prevailing view is that a party cannot on error or appeal complain of a ruling of the court in overruling his challenge for cause if it appear that, when the jury had been completed, his *peremptory challenges were not exhausted,* since he might have excluded the obnoxious juror by a peremptory challenge; and therefore the error is to be deemed an error without injury." (*State* v. *Elliott,* 45 Iowa, 486; *Parker* v. *People,* 4 Neb. 68; *Sharp* v. *State,* 6 Tex. App. 650.) Many other cases might be cited holding the same rule. In note 1 to section 115, Thompson says: "There is some slight and ill-considered authority to the effect that no obligation rests upon a party to make use of his peremptory challenges for the purpose of excluding a juror unsuccessfully challenged for cause." Our opinion as to the true rule of practice in such case accords with "the sound and prevailing view" above named.

4. *View of the Premises:* In strict conformity to the provisions of section 4257 of the General Statutes, and at the repeated requests of the attorneys of the defendant, made in her presence, the court ordered that the jury view the place where the homicide occurred. W. H. Caughlin, the sheriff, was designated by the court to conduct and show the jury the premises. The sheriff and his two deputies were sworn to take charge of the jury during recess of the court, and

recess was then taken for the purpose of the jury making the view. Neither the judge, the clerk, the defendant, nor either of her attorneys was present at the view. The defendant and her attorneys were present in court when said orders were made and recess taken as aforesaid, and knew that said view was about to be taken without the presence of said judge and clerk, and without the presence of the defendant and her attorneys, and without the presence of either of them; and no objection was made thereto, and no suggestion concerning the same was made by the defendant or her attorneys.

It was claimed on motion for new trial, and was pressed by counsel in argument here, that the district court committed fatal error in permitting said view to be had without the presence of the judge and the defendant. Concerning a view of the premises made by the jury in the absence of the judge and the defendant, there is great diversity of opinion found in the decided cases, based upon different grounds. It is held by high authority that the judge and officers of the court, as well as the defendant, must be present; that a view is taking testimony in the case, and, when made in the absence of the defendant, is in violation of his constitutional right of being confronted by the witnesses against him; and that such right cannot be waived. Other authorities, of equal high standing, and with greater force of reasoning, hold that the right of the defendant to be present with or without the presence of the judge and court officers, if such right exists, is statutory, and not constitutional, and may be waived; that the defendant in a criminal case who asks the benefit of the provisions of a statute must take the benefit just as the statute gives it; that the view is not taking evidence in the case, and is not intended to be so, but simply to enable the jury the better to understand the testimony given in court; that whatever the nature of the rights of the defendant may be in such case, and from whatever source such rights may be derived, he may and does waive the same when the action of the court is taken and the view made on his request, and without suggestion that he desires to be present at the view; and that in such case it is too late to complain after verdict. (*Shular* v. *State*, 105 Ind. 290; *State* v. *Reed*, 35 Pac. 706; *State* v. *Lee Doon*, 34 Pac. 1103; *State*

v. *Adams*, 20 Kan. 311; *State* v. *Ah Lee*, 8 Or. 217; *State* v. *Moran*, 15 Or. 262; *Blythe* v. *State*, 47 Ohio St. 234; *Carroll* v. *State*, 5 Neb. 32.)

5. *The Instructions:* The defendant's counsel assign as error the action of the court in refusing to give certain instructions asked by them, and in giving certain instructions of its own motion, on the subject of insanity. No witness testified to any fact tending to show insanity of the defendant on the day of the homicide, and no opinion was expressed by any witness to that effect. No fact or circumstance was developed at the trial in indicating that she was ever of unsound mind; but, on the contrary, in her detailed statement of the conversations had between herself and the deceased in their last interview, and of the acts and movements of each party, and the incidents and circumstances occurring before, during the time of, and after, the fatal tragedy, her testimony shows that upon that day and that occasion her reasoning faculties were in full vigor, and her keen business qualifications were unimpaired and in full activity. The theory of the defense seems to be that the grievous wrongs and atrocious crimes testified to by the defendant as having been inflicted by the deceased upon her six or seven months before the fatal day, in drugging and forcing her to his illicit embraces, upon two occasions, and his refusal on the day of the homicide to sign and give her a paper, duly witnessed, exonerating her to her friends from blame, and acknowledging the paternity of the child she was then carrying as the result of his said illicit intercourse with her, ought to be sufficient to establish her irresponsibility on the ground of insanity, whether or not there is any evidence tending to show insanity at the time of the killing. Such is not the law. It is not sufficient that insanity may exist in the realm of imagination. The rules governing in cases where the defense of insanity is interposed are well established. In the case of the *State* v. *Lewis*, 20 Nev. 333, it is held, on reason and authority, that: (1) "The accused is presumed to be sane until the contrary is shown." (2) "Insanity is an affirmative proposition, and the burden of proving it is upon the defense." (3) "Insanity, as a defense to crime, must be established by a preponderance of the evidence." (4) "If the defendant have capacity and

reason sufficient to enable him to distinguish right from wrong as to the particular act in question, and has knowledge and consciousness that the act he is doing is wrong and will deserve punishment, he is, in the eye of the law, of sound mind and memory, and should be held responsible for his acts."

It requires pertinent, competent, and satisfactory evidence to establish insanity, as any other alleged fact in the case. It is a well understood rule that, if there is no evidence given tending to establish an alleged fact, no instructions need be given on the matter. "Where there is no evidence that the defendant was insane, instructions upon the subject of insanity will not be reviewed." (*People* v. *Wheeler*, 65 Cal. 77.)

The instructions given by the court were correct as propositions of law, and the contention of counsel that, the court having instructed the jury on the subject of insanity, it should have given those asked for by them, is not tenable. The error, if any, was in submitting the question of insanity to the jury when there was no evidence tending to establish that plea. The instructions authorized the jury to consider the question of insanity raised by the defendant in her counsel's opening statement to the jury, and raised nowhere else and in no other manner, so far as the transcript shows. The submission of the question to the jury can certainly be no just cause of complaint on the part of the defendant under the state of facts and the evidence. It was giving an opportunity to the defendant to escape conviction on the plea of insanity without any evidence to support it.

6. *Instructions as to Defendant's Testimony:* Counsel claim that the instructions given concerning the defendant's testimony are error. We think not. The statutes (sec. 4562) make the accused a competent witness in all criminal cases at his own request, but not otherwise; "the credit to be given to his testimony being left solely to the jury, under the instructions of the court." The instructions complained of were considered and approved in *State* v. *Hymer*, 15 Nev. 49; *State* v. *Hing*, 16 Nev. 307; *State* v. *Streeter*, 20 Nev. 403; and in many cases in other state courts.

7. *Instruction on Facts Cited:* The court instructed the jury that even though they should find that at the time of

the shooting, and prior thereto, the deceased had perpetrated certain wrongs upon the defendant, enumerating them at considerable length, but that she shot at him, not in self-defense, but with the intention of killing him, these facts constituted no legal excuse or justification for the shooting. The defendant objects to this instruction, first, upon the ground that it is misleading, because it recites only a part of the facts relied upon by the defendant as constituting her defense. But, admitting that it does only recite a part of them, we do not see that it could have worked the defendant any injury. It informs the jury that, as matter of law, certain facts constitute no defense to the indictment. If other facts existed which did not constitute a defense, they were not excluded from the attention of the jury; and, if they did not constitute a defense, their omission was rather in defendant's favor, as it left the jury at liberty to infer that they did. There is no intimation that the court considered these the only facts in the case, nor does the language justify such an inference.

Furthermore, if the instruction is right as far as it goes, the fact that it does not cover the whole case does not make it erroneous. If other facts existed which the defendant's attorneys wished particularly called to the jury's attention, they should have requested an instruction upon them.

Next, it is objected that it "charges the jury as to the effect of the evidence, and charges them that the evidence relied upon constitutes no excuse or justification." In this connection we must remember what the issue in this case was. The killing being admitted, the only legal excuse or justification there could be was accident or self-defense. Both of these are carefully excluded by the instruction. The jury were told that if the "defendant knowingly, intentionally, and not in necessary self-defense," shot at deceased with the intention to kill him, then the other facts enumerated constituted no excuse or justification. That the instruction states the law correctly cannot be gainsaid. While it was in the power of the jury to acquit the defendant, because of the treatment she testified to having received at the hands of the deceased, as stated in the instruction, they had no legal right to do so. When one human being has been killed by another what shall constitute excuse or justification for

the act is carefully stated in the statute, under the heads of
"Involuntary Manslaughter" and "Self-defense." These de-
fenses the statute describes affirmatively; that is, if certain
facts are found to exist, then the party doing the killing is
excused or justified. This instruction simply puts the matter
negatively; that is, that certain facts which do not march up
to the standard established by the statute were not sufficient.
The court intimated no opinion as to whether these facts
existed or not, nor what their effect might be in connection
with other facts. It was in no sense a charge upon a matter
of fact, but purely one of law. All instructions must be
given in view of a certain state of facts, and whether the
court enumerates these facts or leaves the jury to infer them
can ordinarily make no difference, so long as no attempt is
made to influence or control their conclusions as to what the
facts are. (*State* v. *Loveless*, 17 Nev. 424; *State* v. *Watkins*,
11 Nev. 30; *State* v. *Anderson*, 4 Nev. 265; *Territory* v. *Bur-
gess*, 8 Mont. 57, 78; *Hemingway* v. *State*, 68 Miss. 371, 409;
*Kitchens* v. *State*, 41 Ga. 217.)

But, while we find no error in the instruction as applied to
this case, we do not wish to be understood as unqualifiedly
approving it. It approaches the border line of error, and
under some circumstances might require a reversal of the
case.

Several other alleged errors are assigned, which we do not
consider of such moment or merit as to demand special
attention. We have discussed the prominent points in the
case, while we have given the entire record calm and mature
consideration. We have found nothing in it militating
against the correctness and legality of any of the proceed-
ings of the trial resulting in the judgment we are asked to
reverse. While there are many matters and things dis-
closed in the testimony of the defendant that may justly
awaken human sympathies, the sworn duty of the court,
in its judicial administration of the matters submitted for
its consideration and final determination, requires that it
shall in all cases recognize the wise rules of law, well
grounded and long established, so essential for the protection
of the rights and safety of the community and of the
individual, and that it shall make no distinction therein on

account of the sex of the party involved or other personal considerations.

Every reasonable request of the defendant was granted by the court below during the progress of the trial, so far as the record shows. She was defended by able counsel of her own choice, and tried by a jury of their selection, which to her and them, before trial, were satisfactory. A wide range was granted to the defendant in bringing before the jury her complaints of the wrongs and alleged crimes committed against her by the deceased, long months before the fatal tragedy. No legal avenue was closed to her in making her defense. Her counsel contested nearly every inch of ground traversed by the prosecution. The jury, under the solemnity of their oaths, found the defendant guilty, from the evidence, of murder in the second degree, for which crime the judgment of the court has been duly made and given.

Finding no material error in the record, our duty will not allow us to stay the hand of the law.

The judgment of the district court is hereby affirmed.