OF THE

## TERRITORY OF ARIZONA

### DURING THE YEAR 1904.

[Criminal No. 174.   Filed March 26, 1904.]

[76 Pac. 605.]

## TEODORO ELIAS, Defendant and Appellant, v. TERRITORY OF ARIZONA, Plaintiff and Respondent.

1. CRIMINAL LAW—CHANGE OF VENUE—WHEN GRANTED.—A court is justified in refusing an application for a change of venue on account of the prejudice of the inhabitants of the county, unless it affirmatively appear from the showing that there is such a feeling of prejudice in the community as will be reasonably certain to prevent a fair and impartial trial.

2. SAME—SAME—SHOWING—INSUFFICIENCY.—The intemperate expressions of a mass of people congregated on the streets at the time of the killing, and the publication of a couple of inflammatory articles in the daily papers on the following day, may properly be considered as insufficient to demonstrate the impossibility of a fair and impartial trial in a large county with one city of more than ten thousand inhabitants, from which to select jurors, and this more particularly as the trial occurred nearly a year after such killing and the public expressions and newspaper articles in reference thereto.

3. SAME—SAME—GRANTING DISCRETIONARY—APPEAL AND ERROR—PRESUMPTION—ABUSE.—The denial of an application for a change of venue, being within the sound discretion of the trial court, and there being a presumption in favor of its proper exercise, will not be interfered with on appeal except where an abuse of such discretion is shown by the record.

4. CRIMINAL LAW—CONTINUANCE—DISCRETIONARY—FACTS NOT JUSTIFYING.—Where it appears that a continuance was granted on application of defendant in a criminal case, from October term of court

IX Ariz.—1

until the next April, because of the absence of witnesses, and that in March defendant caused a subpœna to be issued for these witnesses without instructing the sheriff where they could be found, or informing him that one of the witnesses was generally known by a name other than that given in the subpœna, and that one of the witnesses was present at the trial, and the affidavit presented in support of motion for further continuance did not show any probability that the second witness could be found, or due diligence in attempting to secure attendance of the third, and it was a very serious question whether the evidence sought to be furnished by the witnesses would materially affect the defense of the accused, there was no abuse of discretion in the denial of the application for further continuance.

5. TRIAL—JURY—SPECIAL VENIRE — WHEN PROPERLY ORDERED — REV. STATS. ARIZ. 1901, PAR. 2807, CONSTRUED.—Paragraph 2807, *supra* providing that where a sufficient number of jurors fail to appear, the court may in its discretion order a sufficient number to be drawn forthwith and summoned to attend such court,—*held,* that where the court is of the opinion that sufficient jurors are not present, it is proper to order a special venire, although the regular panel is not at that time exhausted.

6. SAME—SAME—METHOD OF SELECTING—REV. STATS. ARIZ. 1901, PARS. 2819, 2820, CONSTRUED.—Paragraph 2819, *supra,* providing that at the opening of court the clerk must write the names of the persons summoned as jurors who are present and not excused upon separate slips of paper and deposit them in a box, etc., and paragraph 2820, *supra,* providing that when an action is called for trial by jury the clerk shall prepare separate ballots containing the names of the jurors summoned who have appeared and have not been excused and deposit them in a box, and then draw from the box the proper number, it was proper to deposit in the box when the action was called for trial the ballots bearing the names of the jurors summoned on the regular venire, together with those summoned on the special venire, the latter having been ordered because the court was of the opinion that there were not sufficient jurors present for transaction of the business before the court.

7. CRIMINAL LAW—HOMICIDE—DEFENSE—INSANITY—QUESTION OF FACT —EVIDENCE—CONFLICT—VERDICT—WILL NOT BE DISTURBED ON APPEAL.—The question of the sanity of the accused at the time of the commission of the offense charged is a matter of fact for the jury to determine, and where there is a conflict of evidence upon the point, and there is material evidence to support the verdict of the jury in relation thereto, it will not be disturbed on appeal.

8. TRIAL—JURY—VIEW OF PREMISES BY—DEFENDANT NOT PRESENT— REV. STATS. ARIZ. 1901, PEN. CODE, SEC. 946, CONSTRUED AND HELD CONSTITUTIONAL.—Section 946, *supra,* provides that whenever in the

opinion of the court it is proper for the jury to view the place at which the accused is charged with having committed the crime, or at which any material fact occurred, the court may order the jury taken there in a body. In a criminal prosecution, upon motion of defendant's counsel and despite the objection of the prosecution, an order was made to take the jury to the scene of the alleged crime. Neither the defendant, his counsel, nor the trial judge accompanied them. No witnesses testified at the taking of the view and the jurors were instructed not to discuss the case among themselves or with any one else. *Held*, that the statute, *supra,* is constitutional, and that the view of the *locus in quo* by the jury, in the absence of the defendant, is not prejudicial error when made with the consent of the defendant.

9. STATUTES—ADOPTED—WITH PRIOR JUDICIAL CONSTRUCTION—SUBSEQUENT CONSTRUCTION NOT BINDING.—The adoption of a statute from another state adopts with it the construction placed upon it by the supreme court of that state at the time of such adoption. Subsequent constructions by such court have no greater weight than the construction placed upon similar statutes by the supreme courts of other jurisdictions.

10. TRIAL—INSTRUCTIONS—SPECIAL—NOT ERROR TO REFUSE WHEN CONTAINED IN GENERAL CHARGE.—Where the charge of the court in a criminal trial included all of the requested instructions to which the defendant was entitled, it is not error to refuse to give them again on request.

11. JURY—PREJUDICE—QUESTION OF FACT.—Where the defendant filed affidavits on motion for new trial alleging that a juror had prejudged his case, which affidavits were rebutted by the affidavits of the trial juror and others which bore the impress of truth, the trial court is warranted in finding that the juror was unprejudiced upon the issue of fact thus presented, and in denying the motion for new trial based thereon.

APPEAL from a judgment of the District Court of the First Judicial District in and for the County of Pima. George R. Davis, Judge. Affirmed.

The facts are stated in the opinion.

Antonio Orfila, and Josiah Ide, for Appellant.

E. W. Wells, Attorney-General, and Roscoe Dale, District Attorney of Pima County, for Respondent.

DOAN, J.—The appellant was indicted in October, 1902, for

murder, alleged to have been committed on the twenty-sixth
day of July, 1902, by shooting and killing one W. H. Kat-
zenstein.     After continuance for the term, and denial of
change of venue and further continuance, he was, in May,
1903, tried in the district court of Pima County, and found
guilty of murder in the first degree, the jury fixing the pen-
alty at death. His motions for a new trial and in arrest
of judgment were denied, and after their denial judgment of
conviction was pronounced, and the death sentence imposed.
He now prosecutes his appeal from the order of the trial
court denying a change of venue, from the order denying
a continuance, from the judgment of conviction, and from
the orders overruling and denying his motion for a new trial
and in arrest of judgment.

The first assignment of error presented is the court's refusal
to grant appellant's application for a change of venue, based
upon affidavits representing that the appellant could not re-
ceive a fair and impartial trial in Pima County by reason of
the prejudice of the people of said county.  In support of
said motion were presented the affidavits of appellant and
his two counsel, citing articles published in two daily papers
about the time or shortly after the killing of Katzenstein,
and the declarations of different persons made on the streets
of Tucson on the night of that occurrence.  Counter affidavits
were filed by the district attorney, sheriff, and different resi-
dents of the county.  This motion was argued and submitted
to the court at the October term, 1902, and was denied, but
permission was granted to renew the same at the time the
case might be called for trial.  The case was then continued
on motion of the appellant from the October term, 1902,
to the April term, 1903, and on May 8, 1903, before the trial
of the cause, the appellant filed a supplemental affidavit and
renewed the motion, the consideration of which was then con-
tinued to be taken up during the impaneling of the jury.  Be-
fore the completion of the impanelment of the jury, the
motion, being again renewed, was denied by the court, to
which ruling the appellant excepted.  The facts set forth in
the affidavits and counter affidavits do not, upon a careful
examination, indicate any abuse by the judge of the lower
court of the discretion that he was called upon to exercise.
in passing upon  this motion.  Before the court is justified

in sustaining an application for a change of venue on account of the prejudice of the inhabitants of the county, it must affirmatively appear from the showing that there is such a feeling of prejudice prevailing in the community as will be reasonably certain to prevent a fair and impartial trial. *State* v. *Daugherty,* 63 Kan. 463, 65 Pac. 696. The intemperate expressions of a mass of people congregated on the streets at the time of the killing, and the publication of a couple of inflammatory articles in the daily papers on the following day, or within a few days thereafter, might properly be considered by the trial judge insufficient to demonstrate the impossibility of a fair and impartial trial in a county as large as Pima County, with one city of more than ten thousand inhabitants, from which to select jurors, and this more particularly as the trial occurred nearly a year after such killing and the public expressions and newspaper articles in reference thereto. An application for a change of venue calls for the exercise of a sound judicial discretion. The presumptions are in favor of the correctness of the conclusions arrived at and the ruling made by the trial court, and they will not be interfered with on appeal by the supreme court except when a clear case is shown by the record of an abuse of such discretion. *State* v. *Armstrong,* 43 Or. 207, 73 Pac. 1024; *Parker* v. *Territory,* 5 Ariz. 283, 52 Pac. 361.

It is next urged that the court erred in refusing appellant's motion for a continuance of the trial. A continuance was granted the appellant from the October term, 1902, to the April term, 1903, because of the absence of the witnesses Gamez, Carrizosa, and Kline. On March 6, 1903, he caused a subpœna to issue for these witnesses, without instructing the sheriff where they could be found. The officers returned the subpœna, declaring their inability to find Gamez, and stating that Carrizosa had left Tucson long prior to the homicide, and that his residence and present location were unknown. Kline was subpœnaed, and was present at the trial, but was not called by the defendant. It was disclosed by the testimony of other witnesses during the trial that the witness Juan Gamez was generally known among his associates and about town as Quate el Maromero, and, while generally known as Quate el Maromero, but few of his associates knew that his name was Juan Gamez. Neither the defendant nor

his attorneys, in ordering his subpœna under the name of
Juan Gamez, advised the sheriff that the witness was the per-
son generally known as Quate el Maromero.     Appellant
averred his ability to prove by the witnesses Carrizosa and
Gamez that between eight and nine o'clock on the evening of
the homicide, being about two hours before the killing, the
deceased, without any provocation, abused the defendant by.
applying vulgar and degrading epithets to him, and that the
witness Gamez would testify that within a few minutes prior
to the killing the deceased again applied vulgar language to
and struck the appellant.    The affidavit presented in support
of the motion did not show any probability of the appellant
being able to secure the attendance of Carrizosa at any future
time to which the case might be continued, and the facts do
not show due diligence on the part of appellant in attempt-
ing to secure the attendance of Gamez.    These facts, in con-
sideration of the further fact that the case had been con-
tinued for six months on account of the absence of these two
witnesses, and the very serious question whether the evidence
sought to be furnished by them would materially affect the
defense of the accused, satisfy us that the trial court did not
in this instance abuse the judicial discretion to which an ap-
plication for a continuance is addressed.

It is next urged that "the court erred in overruling the
challenge to the impanelment of the trial jury."    This claim
is found, on an examination of the statute and the authorities
to be untenable.    The undisputed facts as shown by the record
and conceded by the appellant, are that of the regular panel
there were forty-six jurors in attendance on May 1st; that on
May 6th, two days before the commencement of the trial of
this case, the court ordered: "It appearing that there were
not a sufficient number of jurors present for the transaction
of the business before the court, that twenty good and lawful
men qualified to serve as trial jurors be forthwith summoned
by the sheriff."    Under this order the sheriff made return of
service by special venire upon twenty persons. Afterwards, on
May 9, 1903, during the course of the trial, after the panel was
exhausted by excuses and challenges for cause, another order
was made requiring the sheriff to summon thirty additional
jurors by special venire.    There was no challenge made or ob-
jection offered to the regular panel or to the last special

venire of thirty, but on May 8th, when the case was called for
trial, and twenty-nine jurors were called into the box, a chal-
lenge was offered to the array of such trial jurors on the
grounds that the same had been improperly drawn, because
the array of twenty-nine represented jurors from the regular
panel and from the special open venire of May 6th, and the en-
tire number of jurors constituting the regular panel had not
been exhausted before the order was made directing the special
venire to issue, and because the names of the special venire-
men had been mixed in the same box with the names of those
who had been regularly chosen from the proper list.

Paragraph 2807 of the Revised Statutes of Arizona of 1901
provides: ''Where jurors are not drawn . . . or a suf-
ficient number of jurors fail to appear, such court may in
its discretion order a sufficient number to be drawn forthwith
and summoned to attend such court, or it may, by an order
entered on its minutes, direct the sheriff of the county forth-
with to summon so many good and lawful men of his county
to serve as grand or trial jurors as the case may require.

Paragraph 2819 provides: ''At the opening of court on
the day trial jurors have been summoned to appear . . . the
clerk must then write the names of the persons present and
not excused upon separate slips or ballots of paper . . . and
. . . deposit the slips or ballots in a box, which must be
kept sealed until ordered by the court to be opened.''

Paragraph 2820 provides: ''When an action is called for
trial by jury, the clerk shall prepare separate ballots con-
taining the names of the jurors summoned who have appeared
and not been excused, and deposit them in a box; he shall
then draw from the box twelve names, and in addition thereto
as many more as shall equal the number of peremptory chal-
lenges to which the parties are entitled.''

This challenge is offered under the provisions of section
906 of the Penal Code of Arizona, which provides: ''A
challenge to the panel can only be founded on a material
departure from the forms prescribed in respect to the draw-
ing and return of the jury, or an intentional omission of the
sheriff to summon one or more of the jurors drawn.'' It is
stated by the appellant that paragraph 2807 of the Revised
Statutes of Arizona is in substance and effect the same as
paragraph 226 of the Code of Civil Procedure of California,

and that section 906 of our Penal Code is identical with
paragraph 1059 of the Penal Code of California, and that
the California decisions which construe those sections must be
accepted and are binding as the legal construction of our
statutes, for the reason that in adopting those sections we
necessarily adopted the construction of them therein given.
The grounds of challenge given by appellant were that the
jurors drawn from the regular list had not been exhausted
before the order was made directing a special venire to issue;
that the regular panel must first be exhausted before the or-
der for a special venire can be made, or, if such order can be
made, the jurors summoned under such order shall not be
called into the trial of the case until the last juror on the
regular panel has been passed or challenged; and because
the names of the remainder of the regular venire and the
names of the twenty composing the open venire of May 6th
were deposited together in the box, from which were drawn
the names of the jurors impaneled to try the case. The pro-
cedure, as shown by the record in this case, and as complained
of in this assignment of error, was in exact accordance with
the provisions of the statutes above cited. The court had
ample authority by virtue of paragraph 2807 to order the
open venire at the time it was ordered, and the deposit in the
box on May 6th of the ballots containing the names of the
jurors who had been summoned and appeared at that time was
in direct accordance with the provisions of paragraph 2820.
This is so evident that the citation of authorities is unneces-
sary, but attention might be called to the fact that the
authorities from California cited by the appellant in this case
both plainly support the position of the court against which
they are cited. The supreme court say, in *People* v. *Vincent,*
95 Cal. 425, 30 Pac. 581, on this subject: "As to the second
point, it was held in *Levy* v. *Wilson,* 69 Cal. 105, 10 Pac. 272,
and other cases, that the court, under section 226 of the Code
of Civil Procedure, may at any time direct the sheriff to
summon jurors from the body of the county, although there
be names of properly selected regular jurors in the jury-box."
In *People* v. *Wong Bin,* 139 Cal. 60, 72 Pac. 505, the judge
of department 1 of the superior court of Los Angeles County,
thinking that he had not enough jurors in his regular panel
to obtain a jury in the case, "ordered the clerk to obtain the

term trial jury from department 3, so as to have plenty of
names to draw from, and not have to issue a special venire.''
This action was excepted to by the defendant as a material
departure from the forms prescribed in respect to the drawing
of a jury, as provided by section 1059 of the Penal Code,
equivalent to section 906 of our Penal Code. The supreme
court of California held that while the various departments
of the superior court constitute, theoretically, one court, still,
practically, for the purpose of the trial of causes, they are
distinct, as are other superior courts, and say: ''The judge
presiding in any such department has the power to make and
enforce all orders necessary for the disposition of causes that
have been assigned to his department. . . . If it becomes
necessary for his department to have a jury for the disposi-
tion of causes pending therein, a panel may be obtained in
the manner provided by statute to attend in his department.
Such panel may either be drawn from the 'trial jury-box,'
and summoned by the sheriff (sec. 214, Code Civ. Proc.), or
the sheriff may be directed to forthwith summon so many
good and lawful men as may be required (sec. 226, Code Civ.
Proc.), and the list returned by the sheriff under the order
constitutes the 'panel' (sec. 1057, Penal Code). Such orders
may be made from time to time as the business of the various
departments may require.''

It is next urged that the appellant was not tried by a fair
and impartial jury. It is charged that the court erred in
denying challenges for cause to certain jurors who had formed
or expressed opinions sufficient to disqualify them from acting
as trial jurors. We have carefully examined the facts and
arguments presented by the appellant on this point, have read
and weighed the testimony of the different trial jurors com-
plained of on their *voir dire* examination, and find that the
record does not sustain the charge made by the appellant, and
does not disclose any error by the trial court in its ruling on
the challenges for cause to the different jurors in this case.
A careful consideration of the different questions and answers
satisfies us that the trial court was justified in believing that,
in each instance where a challenge for cause was denied, the
juror evinced an ability to sit impartially in the case, and
accept the evidence that might be introduced in court, and
determine the issue of guilt or innocence with absolute fair-
ness to the defendant and the territory.

The next error urged is that the verdict is contrary to the law and the evidence. The record presents no conflict between the law in the premises and the verdict of the jury, and, when we come to consider the claim that the verdict is contrary to the evidence, the record presents the testimony of seven different witnesses who testified directly that on the night in question there was a fire near the scene of the homicide; that the deceased was a policeman on duty in the city, and was likewise a member of the fire department; that, as the people were gathering and the engine was being driven to the fire, the deceased approached a fire-plug, and as he stooped over to open it the defendant approached with a revolver in his hand, and fired five shots at the deceased, the first shot being fired at a distance of ten or fifteen feet, the defendant approaching as he continued firing. Two witnesses testified that the defendant, immediately prior to this, saw the deceased in the office of a hotel disarm himself and hand his weapons to the clerk in the office, in order to fit himself for work at the fire. Two witnesses who pursued the defendant as he ran from the scene of the homicide, and entered the sheriff's office at almost the same moment the defendant did, testified that the defendant stated to them that he had killed the deceased, and surrendered the weapon, that then contained five empty shells, and was still warm from the effect of the recent discharges, and gave himself into their custody. The abundant proof in the record renders this assignment absolutely untenable.

There was evidence introduced showing that members of a collateral branch of defendant's family were imbeciles, and that one of them was insane. Evidence was introduced that the defendant had a fit or spasm at the age of ten months, and that at the age of twenty-one years, being two years prior to the homicide, he had an epileptic fit. This evidence was presented to the jury to sustain the theory of the irresponsibility of the defendant at the time of the homicide. Both parents of the defendant testified as witnesses in the case. The defendant himself, while he did not take the stand in his own behalf, made several affidavits at and during the trial, and his sanity since his arrest was admitted as well as proven. The question of his sanity at the time of the commission of the offense was thus presented as a question of fact for the jury,

and was properly determined by them in their verdict, and, there being material evidence to sustain such verdict and the finding of the jury therein on this issue, they will not be disturbed by the supreme court under this procedure.

The disposal of this last point brings us to the consideration of what we consider the only point raised in the assignments in regard to which there is any question. This is the assignment that "the court erred in permitting the jury to view the premises where the homicide was committed, and said view was had without the presence of appellant or his counsel, or of the trial judge." It is urged that this view was had under the provisions of section 946 of the Penal Code of Arizona, which is in substance identical with section 1119 of the Penal Code of California, where this section has been construed by the supreme court of that state to be unconstitutional, as inconsistent with the state constitution of California and the constitution of the United States. In support of this position, the appellant has quoted extensively from *People* v. *Bush,* 68 Cal. 623, 10 Pac. 169; *People* v. *Huff,* 72 Cal. 117, 13 Pac. 168; and *People* v. *Yut Ling,* 74 Cal. 569, 16 Pac. 489, decided upon the authority of *People* v. *Bush, supra,* in which the supreme court of California hold that the defendant should be present at all times during the trial, and say: "In the case at bar there was a conflict in the evidence which had been submitted to the jury, between that given by witnesses for the defendant and that by Valentine, the principal witness for the people. There is little doubt that the order made for the view was for the reason that the court thought it necessary for the jury to determine, by looking at various physical objects, extending along the road for some distance, which was the true and reliable testimony as to the matters where this conflict existed. They went to the places designated in the order, and Valentine, the witness, pointed out and named to them the objects therein embraced. The jury viewed them as they lay along the road, and therefrom must have determined which evidence, upon certain points, they deemed most worthy of belief. They thus received evidence in the absence of the judge, the defendant, and his counsel. . . . A defendant in a criminal case amounting to felony has a right to be tried in the presence of the court, of which the judge is an integral part; to be represented in every step of the case by counsel;

to be personally present, and to be confronted by the witnesses against him; and section 1119 of the Penal Code, so far as it is in conflict with, or in any manner abridges, these rights, or any of them, is unconstitutional and void.'' It is worthy of notice in this connection that in this case the defendant objected to the order of view when made by the court. The order of the court specified: ''It is ordered that the jury be conducted in a body, in custody of the sheriff, to such places, and that the witness Valentine show to said jury the following places, viz: First, . . .; second, . . .; third, . . .; fourth, . . .; fifth, . . .; sixth, . . .; seventh, . . .; eighth, . . .; ninth, . . .; tenth, . . . It is ordered that the interpreter, . . . heretofore sworn as such in this case, accompany the witness Valentine and that a copy of this order be furnished said sheriff, and be interpreted to said witness Valentine, so that he may be enabled to point out the said places.'' The court afterwards modified the said order by striking out the part embraced under the fifth, sixth, and seventh heads, and made the following indorsement thereon: ''The foregoing order is modified so as to strike out and omit the fifth, sixth, and seventh places mentioned therein. ————————, Judge.'' An exception was taken to this action of the court, and the ruling in the supreme court was based upon the ground that the action of the court was opposed to the principle which gives to the defendant the privilege of being confronted by the witnesses against him. The statement of Judge Cooley (Constitutional Limitations, par. 319), that ''in cases of felony, where the prisoner's life or liberty is in peril, he has the right to be present, and must be present, during the whole of the trial, and until the final judgment,'' was quoted as applicable to the issue under consideration. In the cases cited by the appellant, except that of *People* v. *Yut Ling, supra,* the order of the court was objected to by the defendant when made, and witnesses for the prosecution, by order of the court, attended at the view, and testified in the presence of the jury and in the absence of the defendant. Perhaps for that reason we find that the California cases cited discuss this subject on the theory that the view of the premises was a part of the trial, and it seems that the circumstances in these cases did in fact render it such. In the case at bar, however, the view of the premises was had on motion of the defendant. Page 673 et seq.

of record: *"By Mr. Orfila* (counsel for defendant):
This will be an opportune time now for the jury to go to see
the premises. I have no objection to the interpreter going.
He can point out . . . *By Mr. Dale* (district attorney):
The territory objects. . . *By the Court:* . . . If we can-
not proceed any further this afternoon with the examination
of witnesses, it seems that this would be a favorable time for
the jury to take a view of the premises. The statute provides
that whenever, in the opinion of the court, it is proper for
the jury to view the place in which the defendant is charged
to have committed the offense, or in which any other material
fact occurred, it may order the jury to be taken in a body, in
the custody of the sheriff, to the place which shall be shown
to them by a person appointed by the court for that purpose.
The sheriff must be sworn to suffer no person to speak or com-
municate with the jury on any subject connected with the case,
and the officer shall return them into court without delay or
at the specified time. Is there a concurrence in the matter of
the appointment of a person? *Mr. Orfila:* I suggest Mr.
Hughes, because he has been here listening to the testimony,
and he is familiar with these points, and he is an officer of the
court. *By the Court:* It would seem to me that the testi-
mony before the jury is full enough to enable the jury to find
these different points and to go themselves to the place, with-
out the necessity of any one pointing it out to them. *By Mr.
Orfila:* I think so. *By Mr. Dale:* We don't care for any
one other than the bailiff. *By the Court:* The bailiff will not
point out the place to the jury. He is not there for that
purpose. He will not have any communication with the jury
in relation to this case. So, upon the request of counsel for
the defendant, and the court being of the opinion that it is
proper that the jury should view the place in which this
offense is charged to have been committed, the jury may take
this time and in a body proceed in the custody of the officer,
who has heretofore had them in charge, to the place, and the
officer may be sworn in conformity to the statute. . . . Gen-
tlemen of the jury, you may now proceed, and the further trial
of the case will be postponed until 9:30 to-morrow morning,
and you will return into the court in charge of the officer at
that hour; and during this interval you will bear in mind the
admonition previously given you not to talk among yourselves

or with any other person on any subject connected with the
trial of this case; not to form or express any opinion until the
case is finally submitted to you. You will now retire with the
officer.'' In the California cases the defendant objected to the
order authorizing the view, and such order in each instance
included authority for testimony to be given in the presence
of the jury and in the absence of the defendant, whereas in
the case at bar the order was made on motion of counsel for the
defendant, in the presence of defendant and his counsel, over
the objection of the district attorney, no witnesses attended or
were authorized to testify at the taking of the view, and before
the dismissal of the jury the further trial of the case was post-
poned until the following morning, and the jurors were in-
structed not to talk among themselves or with any other person
on any subject connected with the trial of the case, or to form
or express any opinion. The case at bar thus presents a differ-
ent question than was considered in the California decisions
cited, and is fairly in line with those in which it has been held
by the supreme courts of other jurisdictions, under similar
statutes, that the view of the *locus in quo* by the jury, in the
absence of the defendant, is not prejudicial error when made
with the consent of the defendant. These cases seem founded
upon decidedly the better reasoning on this subject, and while
it is urged by the counsel for the appellant in this instance
that, our statute granting the view having been taken from
California, our legislature adopted it with the construction
placed upon it by the supreme court of that state, the true
doctrine is that the adoption of a statute from another state
adopts with it the construction placed upon it by the supreme
court of that state at the time of such adoption. An ex-
amination of our Compiled Laws will show that this provi-
sion was taken from the California statutes as early as 1877,
and at that time the construction placed upon it by the su-
preme court of California was given in the language of the
court in the case of *People* v. *Bonney,* 19 Cal. 427, wherein
it was held that ''The court had the discretion to permit
the jury to view these physical objects, and this was neither
in contemplation of the act, nor otherwise any part of the trial.
It was rather a suspension of the trial to enable the jury to
view the ground, etc., that they might better understand the
testimony. We do not see what good the presence of the pris-

oner would do, as he could neither ask nor answer questions, nor in any way interfere with the acts, observations, or conclusions of the jury. If he had desired to see the ground, that he might be assisted in his defense by the knowledge thus obtained, possibly the court would have granted him the privilege; but the fact that the jury went upon the ground without being accompanied by him is no good reason for setting aside the verdict, especially as he neither made objection nor asked permission to accompany them at the time." This construction, placed upon the statute by the supreme court of California at the time we adopted it, and therefore the construction we adopted with it, is the construction contended for by the appellee in the case at bar, and in our opinion correctly declares the law on the subject. The construction that may have been placed upon it by decisions of the supreme court of that jurisdiction after its adoption by us would have no greater weight with us than the construction placed upon similar statutes by the supreme courts of other jurisdictions. The supreme court of Nevada very fairly states the law on this subject in *State* v. *Hartley,* 22 Nev. 342, 40 Pac. 372, 28 L. R. A. 33, as follows: "Concerning a view of the premises made by the jury in the absence of the judge and the defendant, there is great diversity of opinion found in the decided cases, based upon different grounds. It is held by high authority that the judge and officers of the court, as well as the defendant, must be present; that a view is taking testimony in the case, and, when made in the absence of the defendant, is in violation of his constitutional right of being confronted by the witnesses against him; and that such right cannot be waived. Other authorities, of equal high standing, and with greater force of reasoning, hold that the right of the defendant to be present with or without the presence of the judge and court officers, if such right exists, is statutory, and not constitutional, and may be waived; that the defendant in a criminal case who asks the benefit of the provisions of a statute must take the benefit just as the statute gives it; that the view is not taking evidence in the case, and it is not intended to be so, but simply to enable the jury the better to understand the testimony given in court; that whatever the nature of the rights of the defendant may be in such case, and from whatever source such rights may be derived, he may and does waive the same when the ac-

tion of the court is taken and the view made on his request, and without suggestion that he desires to be present at the view; and that in such case it is too late to complain after verdict. *Shular* v. *State,* 105 Ind. 290, 4 N. E. 870, 55 Am. Rep. 211; *State* v. *Reed,* 3 Idaho, 754, 35 Pac. 706; *State* v. *Lee Doon,* 7 Wash. 308, 34 Pac. 1103; *State* v. *Adams,* 20 Kan. 311; *State* v. *Ah Lee,* 8 Or. 217; *State* v. *Moran,* 15 Or. 262, 14 Pac. 419; *Blythe* v. *State,* 47 Ohio St. 234, 24 N. E. 268; *Carroll* v. *State,* 5 Neb. 32.'' The decisions of the courts of last resort in different jurisdictions on the questions presented herein have been collated and presented in the opinion of the supreme court of Utah in the case of *State* v. *Mortensen,* 26 Utah, 312, 73 Pac. 562, wherein is decided this identical question under a similar statute taken, as was ours, from California, and to which we refer as a full and able presentation of the law on this subject.

The appellant has excepted to the refusal of seven several instructions requested by the defendant, and to the definition given of reasonable doubt. The charge of the court included all of the requested instructions to which the defendant was entitled, and for that reason the court was not required to give them again on request. The definition of reasonable doubt as given in the charge was not error, but was sufficiently full and clear.

The appellant based his motion for a new trial on four affidavits that H. W. Huggins, a juror, had prejudged the case, and had in July and August, 1902, stated that the defendant should be hung, and that he would like to get on the jury, and would hang the accused. The facts alleged in the affidavits were controverted by counter affidavits of Huggins and three other persons, and the affidavit of W. H. Barnett, a fellow juror, was filed to the effect that Huggins was very reluctant to affix the death penalty, and his reluctance to do so was very largely instrumental in delaying the return of the verdict for about eighteen hours. The four affiants for appellant then filed supplemental affidavits, admitting the untruth or incorrectness of some of the facts and circumstances as set forth in their first affidavits, but realleging the statements by Huggins charged in the former affidavits. The *voir dire* examination of Huggins, and his affidavit, and those of Pemberton, Beck, Geddes, and Barnett, bear the impress of truth, and, in

our judgment, fully warranted the court in finding as it did on the issue of fact which was thus presented.

The record disclosing no prejudicial error, the judgment of the lower court is affirmed.

KENT, C. J., and SLOAN, J., concur.