360 P.2d 474

**STATE** of Arizona, Appellee,

v.

**Honor ROBINSON, Appellant.**

No. 1169.

Supreme Court of Arizona.

March 22, 1961.

Rehearing Denied May 16, 1961.

Joel B. Olmsted, Glendale, and Allan J. Stanton, Phoenix, for appellant.

Wade Church, former Atty. Gen., Stirley Newell, former Asst. Atty. Gen., Robert W. Pickrell, present Atty. Gen., Charles C. Stidham, former County Atty., Charles N. Ronan, present County Atty., Donald Meyers, former Deputy County Atty., and Howard P. Leibow, Deputy County Atty., Phoenix, for appellee.

BERNSTEIN, Vice Chief Justice.

The defendant, Honor Robinson, was informed against and tried for the unlawful killing of one William Henry Bischoff on or about December 21, 1958. He was convicted of first degree murder and the death penalty was imposed. He now appeals.

It appears from the evidence that Vera Whipple and William Henry Bischoff, hereinafter referred to as the deceased, arrived in Phoenix from the State of Washington in December, 1958. On December 15, 1958, they met the defendant, a Negro. The deceased and defendant entered into a conversation, at that time, in which the deceased asked if he, Mrs. Whipple and her children might stay with the defendant since they had no money and were without a place to stay. The defendant invited them to live at his home at 4314 South 34th Street, Phoenix. At this time the defendant believed that they were man and wife.

After a few days, Vera Whipple disclosed to the defendant that she was not married to the deceased. The activities of these three during this time amounted to "lining-up" places to burglarize. In carrying out this activity they would drive around the various parts of the city. On several occasions the defendant and Vera Whipple would drive out together without the deceased. The defendant soon became attracted to Vera Whipple. This attraction culminated in an affair at the Paducah Hotel on the night of December 20, 1958.

On the following morning the deceased called the Maricopa County Sheriff's office in an attempt to locate Vera Whipple. Before the sheriff's officer arrived the defendant and Vera Whipple returned to the house. An argument ensued when the deceased displayed anger at Vera Whipple's staying out all night with the defendant. This aroused an antagonism between the deceased and the defendant. That evening the defendant lured the deceased to Papago Park on a plan to burglarize a house in the area.

When they reached Papago Park and parked the car, the two men proceeded to walk up a dirt road in the park. As they were walking, the defendant feigned a stumble which enabled him to get behind the deceased. The defendant seized the opportunity and shot the deceased twice in the back. At the trial the defendant claimed he shot in self-defense when the deceased "lunged" at him with an ice pick. After the shooting, the defendant dragged the body off the road and removed all identification from the deceased's person and returned home. He lived with Vera Whipple until December 31, 1958, when he was arrested.

Defendant urges that the trial court in denying his motion for a change of venue deprived him of a fair and impartial trial. It is contended that because of the publicity given the murder and the fact that the defendant was a Negro and the deceased, a white man, the community had a prejudice against the defendant. The rule in this jurisdiction is:

"Whether the application [for a change of venue] should have been granted is largely a matter of discre-

tion of the trial court which we will not disturb unless it clearly appears that such discretion was abused. * * *" Burgunder v. State, 55 Ariz. 411, 103 P.2d 256, 261; State v. Thomas, 78 Ariz. 52, 275 P.2d 408 affirmed 356 U.S. 390, 78 S.Ct. 885, 2 L.Ed.2d 863.

The record discloses that the trial court was very vigilant in selecting and determining the qualifications of the jurors and especially to whether they had read any newspaper articles concerning the facts and circumstances of the killing. There was no abuse of discretion in denying a change of venue.

■ The defendant in his next assignment of error alleges that the trial court erred in refusing to let the defendant answer a question on direct examination relating to his motive. When the defendant took the witness stand in his own behalf he was asked:

"Q. Honor, did you kill Bill Bischoff? A. Yes, sir.

"Q. Why did you kill him? A. To keep—

"Mr. Meyers: We object. This is a conclusion.

"The Court: It does call for a conclusion. Just get the facts."

The law is well settled in this jurisdiction that "the reason why defendant fired the shot, when explained from his viewpoint, is not self-serving, nor is it considered a conclusion of the witness." Richardson v. State, 34 Ariz. 139, 268 P. 615, 616. If the rule were otherwise, a party accused of a crime would have virtually no way of claiming self-defense. Especially is this the case when there are no eye witnesses to the crime. The trial court should have permitted the defendant to answer.

However, in other parts of his examination on direct and cross-examination, the defendant testified that he shot the deceased when the latter attacked him with an ice pick; and that he was surprised and scared at this action on the part of the deceased: "* * * I jumped backwards and shot twice, I had my eyes shut, I didn't know where they went, I was just scared, I first jumped back and shot twice, then I ran, didn't know what to do." The error, if any, was thereby cured when the defendant was permitted to relate the facts surrounding the killing including his reasons why he did it. State v. Aldrich, 75 Ariz. 53, 251 P.2d 653; Macias v. State, 36 Ariz. 140, 283 P. 711.

The defendant contends that the trial court erred in refusing to allow defendant to testify as to the voluntary nature of a purported confession. This alleged error occurred during the direct examination of Chief of Police Farley as follows:

"Q. Where did you see him on January 1st? A. In my office at the Tempe Police Department.

"Q. Would you relate the time and who was there, if you can remember? A. As to the time, I will have to refer to my notes. Approximately 6:30 P.M. on the 1st.

"Q. And who was present sir? A. Present was Don Meyers, Deputy County Attorney, Julius Brown, Court Reporter, Captain Frank Adams and myself.

\* \* \* \* \* \*

"Mr. Meyers: Well, at the time you talked to him on January 1st were any threats made to him?

"The Witness: No.

"Q. Was the conversation with him given by him freely and voluntarily? A. Yes, it was.

\* \* \* \* \* \*

(out of the hearing of the jury)

"Mr. Olmsted: It is our desire at this point to place the defendant Robinson on the stand to give limited testimony to the circumstances surrounding the taking of the alleged statement and admission.

"The Court: You can't put him on before the State has finished their case, I don't know of any procedure like that."

The procedure for admitting a confession into evidence during the course of a criminal trial has been set forth by this Court in State v. Pulliam, 87 Ariz. 216, 349 P.2d 781 and State v. Hudson, 89 Ariz. 103, 358 P.2d 332.

■■ "The rule against admission of statements not voluntarily made applies only to confessions and not to statements against interest." State v. Romo, 66 Ariz. 174, 185 P.2d 757, 764. The statements which were offered and received, and which the defendant now assigns as error, were not confessions but admissions exculpatory in nature. The statements in question concern the questioning of the defendant in the office of the Chief of Police of Tempe, Arizona, by Chief Farley in the presence of three other people on January 1, 1959. Chief Farley testified that the defendant freely and voluntarily stated in substance that Vera Whipple was with the deceased on the night of December 21, 1958, and that he was in downtown Phoenix.[1]

---

1. Chief Farley's testimony concerning the statements of the defendant on January 1, 1959, was in the part material here: "That on this particular Sunday, the 21st, that along about dark, just dark, as I determined it, that he left the house

alone, afoot, and went down to Broadway to catch a bus into Phoenix. That while he was standing there waiting for the bus that he saw Vera Whipple and Bischoff drive off in the Pontiac, that he went on to town and he stayed there for

Defendant's admissions were therefore not confessions or admissions of guilt. They were just statements denying guilt and inferring that Vera Whipple did the killing. The court did not err in refusing to hear the testimony of the defendant to determine whether the statements were freely and voluntarily made. State v. Romo, supra. See also McDaniels v. State, 62 Ariz. 339, 158 P.2d 151, 155; Davis v. State, 41 Ariz. 12, 15 P.2d 242; State v. Campbell, 73 Kan. 688, 85 P. 784, 9 L.R.A.,N.S., 533.

It should be noted that a written transcript of defendant's confession taken January 7, 1959, consisting of 45 pages was offered and admitted subject to matters that were excluded at the request of defense counsel in chambers. The defendant did not object to this confession (Exhibit 31) being admitted.

■ The defendant contends that two exhibits, the register of the Paducah Hotel and a title to an automobile found in the defendant's possession, were erroneously admitted into evidence for the reason that a proper foundation was not laid. The defendant admitted that he and Vera Whipple stayed together at the Paducah Hotel the night of December 20, 1958. The fact that the manager of the hotel could not identify the persons who regis-

tered that night except as a white woman and a colored man goes only to the weight and not to the admissibility of the exhibit.

The defendant was driving a car registered in the deceased's name, when arrested. The defendant admitted driving the car. The reception into evidence of these exhibits was proper.

The defendant next contends that the trial court erred in admitting into evidence a certain photograph of the deceased on a slab at the morgue. He objects on the ground that it was a gruesome and inflammatory photograph designed solely to inflame the passions of the jury.

■■ The photograph was used during the examination of the County Medical Examiner who performed the autopsy. It was utilized by the Medical Examiner to identify the deceased and also to show the location of the wounds from which he extracted the deadly bullets. Photographs of a deceased body are admissible to identify the deceased and to show the location of the mortal wounds, to show how the murder was committed and to aid the jury in understanding the testimony of the witnesses. State v. Thomas, supra. See also Burgunder v. State, supra; Young v. State, 38 Ariz. 298, 299 P. 682; Janovich v. State, 32 Ariz. 175, 256 P. 359.

quite awhile, quite a little while, and he came back, if I remember correctly, around 9:30 or 10:00 o'clock, that when

he got home Bischoff was not there, that he asked her where Bischoff was, but he didn't find out."

■ Complaint is made to the trial court's refusal to give a requested instruction of the defendant (No. 18). The proffered instruction related to the sudden peril doctrine. In effect it stated some of the elements of self-defense, but not all of them. The defendant relied upon the doctrine of self-defense to justify his shooting the deceased. Self-defense was fully and adequately covered in other instructions given to the jury by the trial court. The requested instruction being adequately covered in other instructions, no error resulted by refusing to give the defendant's proffered instruction. State v. Wallace, 83 Ariz. 220, 319 P.2d 529; State v. Colvin, 81 Ariz. 388, 307 P.2d 98; State v. Hendricks, 66 Ariz. 235, 186 P.2d 943. Cf. Everett v. State, 88 Ariz. 293, 356 P.2d 394.

■ The defendant contends that the trial court erred in giving a requested instruction of the State (No. 20). The instruction given stated: "The right of self-defense is not available to a person who has sought a quarrel with the design to force a deadly issue and thus through his fraud, contrivance or fault, to create a real or apparent necessity for making a feloni-

ous assault." This is a correct statement of the law and was applicable in view of the evidence of contrivance on defendant's part to kill the deceased.[2] State v. Betts, 71 Ariz. 362, 227 P.2d 749. See also State v. Folk, 78 Ariz. 205, 277 P.2d 1016; Valdez v. State of Arizona, 49 Ariz. 115, 65 P.2d 29. The trial Court properly instructed the jury as to the law involved in this case.

■ The granting or denying of a motion for a new trial lies within the sound discretion of the trial court and will not be disturbed by this court unless an abuse of discretion exists. State v. Bogard, 88 Ariz. 244, 354 P.2d 862; State v. Chase, 78 Ariz. 240, 278 P.2d 423; McDaniels v. State, supra. In view of what we have said above, we find no abuse of discretion.

■ Lastly, the defendant requests that this court reduce his sentence under the authority of A.R.S. § 13-1717. The defendant having been found guilty of murder in the first degree it was within the discretion of the jury to determine the punishment. A.R.S. § 13-453. Unless the record shows that this discretion was abused, Hernandez v. State, 43 Ariz. 424,

---

2. Chief of Police Farley testified that the defendant when questioned said: " * * That while they were walking up this road he had no intention of burglarizing the house nor did he have any chosen spot along the road where he was going to perform the killing. As they walked up the road that Bischoff was walking to the right-hand out of the south rut of the road and that he was walking in the left-hand rut, and that they, as they started up this little incline in the road that he stumbled on purpose so that it would throw him back from Mr. Bischoff. At this point that he shot Bischoff twice in the back."

32 P.2d 18, or the decision is capricious or arbitrary, State v. Fenton, 86 Ariz. 111, 341 P.2d 237, 243, the sentence must remain.

"The individual views of the members of this court on the issue of capital punishment are irrelevant. We are limited to the judicial function of faithfully interpreting and applying the law as we find it.  *  *  *" State v. Fenton, supra.

There is nothing in the record that would justify the court in interfering with the death sentence.

Judgment affirmed.

STRUCKMEYER, C. J., and UDALL, JENNINGS and LOCKWOOD, JJ., concur.