370 P.2d 261

STATE of Arizona, Appellee,

v.

Patrick Mahon McGEE, Appellant.

No. 1193.

Supreme Court of Arizona.

En Banc.

March 28, 1962.

Rehearing Denied April 24, 1962.

John H. Grace, and William R. Preston, Flagstaff, for appellant.

Robert W. Pickrell, Atty. Gen., Kenneth G. Flickinger, Jr., Asst. Atty. Gen., and Laurance T. Wren, County Atty., for appellee.

JENNINGS, Justice.

Patrick Mahon McGee, hereinafter called "Defendant", was convicted of the first degree murder of Ary J. Best, an arthritic cripple. From the conviction and sentence of death, he appeals. The facts will be stated in the light most favorable to sustaining the conviction pursuant to our usual rule. State v. Evans, 88 Ariz. 364, 356 P.2d 1106 (1960).

The defendant met Millie Neil Fain, hereinafter called "Mrs. Fain", in Stockton, California, in November, 1958, at which time they began living together. Some time after April, 1959, they left Stockton for a tour through the western states. During their travels they did a great deal of drinking and stayed on the side of the road at nights.

Their car developed transmission trouble in New Mexico and upon arriving in Winslow, Arizona, they attempted to raise money by selling some of their personal belongings. The following morning they started west toward Flagstaff. Their car continued to give them trouble and had to be pushed two or three different times. In each instance Mrs. Fain flagged down a tourist. The last party flagged down by her was the victim, Ary J. Best.

Mrs. Fain (an admitted prostitute) at the insistence of the defendant, propositioned the victim as she had other men on previous occasions during their travels. The proposition was completed in a wooded area alongside the highway although intercourse did not take place. Nevertheless, the victim gave her three dollars. She returned to

the defendant, who had remained by the two vehicles near the roadway, and handed him the three dollars. He then told her to return to the victim, saying that he would be down in a minute. A moment or two later the defendant followed her to the spot where she and the victim were sitting on a blanket. The defendant rushed by her and said, "What are you doing with my wife"? He then stabbed the reclining victim four times in the chest and back with a hunting knife. After the initial stab wounds had been inflicted, he placed the knife in the hands of Mrs. Fain and ordered her to stab the victim in the neck, for the purpose of making her a party to the crime. This she did by inflicting a knife wound on each side of the victim's neck. After the infliction of the neck wounds the victim was still alive. The defendant then stabbed him in the throat to "put him out of his misery".

After taking the victim's billfold containing several one hundred dollar bills, the defendant and Mrs. Fain took the victim's car and luggage and drove toward Flagstaff. They left the victim's car in Williams, Arizona, and caught a train to Los Angeles, California, where they were arrested on August 1, 1959. At that time the defendant admitted stabbing the deceased but claimed self-defense, contending the deceased had attempted to use a pocket knife and also justification, contending the deceased was trying to rape Mrs. Fain. He also admitted taking the victim's wallet immediately after the stabbing.

To secure a reversal of the judgment, defendant has made seven assignments of error which will be considered in the order presented.

The first assignment is that the trial court erred in denying defendant's motion to have the Honorable Jack L. Ogg reassign the case to the Honorable H. L. Russell, in whose court the action was commenced. Judge Russell had made rulings for the appointment of counsel and for separate preliminary hearings of the defendant and Mrs. Fain. He also had ruled on a motion for severance, a motion regarding trial setting and had heard arguments on the petition of defendant for a writ of habeas corpus. On a motion for change of venue, Judge Russell announced his own disqualification to rule on the motion and to serve in any and all further proceedings. He later gave as his reason for disqualification "bias and prejudice".

Defendant contends that since Judge Russell had made rulings on litigated matters in the case, he could not disqualify himself in the absence of showing a proper reason therefor, and that at the time there was not before the court any reason. To support such contention he cites Arizona Conference Corp. of Seventh Day Adventists v. Barry, 72 Ariz. 74, 231 P.2d 426 (1951) wherein it was stated:

" * * * It is the duty of a judge * * * to exercise the judicial functions duly conferred on him by law, and he has no right to disqualify himself in the absence of a valid reason * * *." 72 Ariz. at 77, 231 P.2d at 428.

It should be noted that the Barry case did not present the same question as presented in the instant case. The question there, as characterized by this Court, was:

" * * * May a judge disqualify himself after he has ruled on litigated matters *where he is not biased and prejudiced,* but solely for the reason that an untimely request * * * was filed against him? * * * " (Emphasis supplied.) 72 Ariz. at 77, 231 P.2d at 428.

In the Barry case, an affidavit of bias and prejudice was filed after rulings had been made on certain motions. The holding in that case went to the timeliness of the filing of the affidavit rather than to the fact of self-disqualification for actual bias and prejudice. Moreover, insofar as the Barry case holds that a ruling made on a motion prohibits the judge from being disqualified, it has been expressly disapproved in Marsin v. Udall, 78 Ariz. 309, 279 P.2d 721 (1955). In that case this Court stated that in order for such a ruling to be so operative, it must be on a matter of evidence to be used in the final determination of the case on its merits.

Thus, even if the prohibition should be taken to extend to self-disqualification, the proceedings in this case had not reached the point beyond which disqualification. of a judge by an affidavit of bias and prejudice is prohibited.

The intent of our rules and statutes is to have cases tried by judges who are not biased or prejudiced in any particular. Zuniga v. Superior Court, 77 Ariz. 222, 269 P.2d 720 (1954). In that case it was held that a judge may on his own motion, if he acts timely, disqualify himself even though the reason given might not be sufficient to form the basis of a legal disqualification. This proposition is further advanced in the Marsin case, supra, wherein this Court characterized the holding in the Barry case, supra, as follows:

" * * * That case decided * * * that if a judge had been permitted to go this far, he could not even disqualify himself unless in fact he were disqualified. There is a distinction between being in fact disqualified and being disqualified by reason of the filing of the affidavit. * * * " 78 Ariz. at 313, 279 P.2d at 723.

Thus, where a judge finds himself in fact disqualified, as Judge Russell did by reason of bias and prejudice, he not only may disqualify himself on his own motion but should. In the instant case Judge Russell properly exercised his duty.

Defendant's second assignment of error is the trial court's denial of defendant's motion to inspect and copy the statements made by defendant and Mrs. Fain to police officers in California and Flagstaff, Arizona, which were reduced to writing, and to inspect and copy the results of the lie detector test given to Mrs. Fain.

Defendant contends the court abused its discretion in denying the motion as there were unusual circumstances in the case which made it necessary for the defendant to have these statements in order to properly prepare his defense, and that in denying defendant the right to inspect these documents, the court impeded the due administration of justice.

■ An order granting or denying defendant's motion for inspection of statements of defendant and other documents is addressed to the sound discretion of the trial court. State ex rel. Mahoney v. Superior Court of Maricopa County, 78 Ariz. 74, 275 P.2d 887 (1954); State ex rel. Andrews v. Superior Court of Maricopa County, 39 Ariz. 242, 5 P.2d 192 (1931). The court has inherent powers to order production and inspection and copying of documents when necessary to the due administration of justice. State ex rel. Polley v. Superior Court of Santa Cruz County, 81 Ariz. 127, 302 P.2d 263 (1956); State ex rel. Mahoney v. Superior Court of Mari-

copa County, 78 Ariz. 74, 275 P.2d 887 (1954).

In the Santa Cruz case, supra, this court said:

"At the outset let it be clearly understood we are of the opinion a defendant does not have an unqualified right to inspect his written statement in the hands of the prosecutor—be it either a confession or an admission against interest—but that an application for same is addressed to the sound discretion of the trial court * * *." 81 Ariz. at 130, 302 P.2d at 265.

In the recent case of State ex rel. Helm v. Superior Court of Cochise County, 90 Ariz. 133, 367 P.2d 6, 10 (1961) we recognized the merit in "* * * permitting greater pretrial discovery in criminal cases." But in that case we also noted:

"* * * It is the trial judge who is best able to determine on a case by case basis whether inspection in a particular instance is in the interest of justice. And it is the trial judge who can best ascertain whether good cause for inspection has been shown * * *." 90 Ariz. at 137, 367 P.2d at 9.

We have not held, however, that a defendant has an unqualified right to inspect and copy statements of defendant and other wit-

nesses.[1] Such matter is within the sound discretion of the trial court. However, we do not at this time decide the question whether the defendant has a right to inspect and copy the statements of other witnesses even under exceptional circumstances.

■ In the instant case defendant contends that refusal to grant his motion to inspect statements made by him and Mrs. Fain was an abuse of discretion. He bases this contention on the fact of diversity of defenses and that Mrs. Fain was listed as a witness against him. These facts were not considered by the trial court to be sufficient to compel him to grant the motion. In the absence of a clear showing of abuse of discretion this Court will not upset a discretionary order. No such abuse is apparent here.

■■ As to the refusal to permit inspection of the lie detector test, the refusal was proper as this was not and could not be evidence in itself. State ex rel. Andrews v. Superior Court of Maricopa County, 78 Ariz. 74, 275 P.2d 887 (1954).

Defendant's third assignment is that the court erred in denying the defense motion for a change of venue prior to the commencement of the trial and that the trial court erred in denying the defense motion for a new trial predicated upon said error of denying the motion for change of venue as denying defendant a fair and impartial trial.

Defendant filed his motion for a change of venue based upon his affidavit which incorporated several items of the Arizona Daily Sun, a daily newspaper of general circulation in Coconino County, asserting that by reason of the publicity concerning the case, the general populace was inflamed against the defendant and his cause and thus it was impossible for him to receive a fair and impartial trial in Coconino County. In support of this assignment defendant cites Ariz.Const. Art. 2, § 24, A.R.S.,[2] and Rule 201 of the Arizona Rules of Criminal Procedure, 17 A.R.S.,[3] together with Elias v. Territory, 9 Ariz. 1, 76 P. 605 (1904) wherein this Court said:

"* * * Before the court is justified in sustaining an application for a change of venue * * * it must affirmatively appear from the showing that there is such a feeling of prejudice

1. But see Funk v. Superior Court, 52 Cal. 2d 423, 340 P.2d 593 (1959). See also Powell v. Superior Court, 48 Cal.2d 704, 312 P.2d 698 (1957).

2. "In criminal prosecutions, the accused shall have the right * * * to have a speedy public trial by an impartial jury

of the county in which the offense is alleged to have been committed, * * *."

3. "On a prosecution * * * the state or the defendant may apply for removal of the action to another county on the ground that a fair and impartial trial cannot be had for any reason other than the interest or prejudice of the trial judge."

prevailing in the community as will be reasonably certain to prevent a fair and impartial trial. * * *" 9 Ariz. at 4, 76 P. at 606.

Defendant also cites People v. Hyde, 75 Misc. 407, 133 N.Y.S. 306, affirmed, 149 App.Div. 131, 133 N.Y.S. 780 (1912) where the court in ruling on a motion for change of venue stated:

" * * * The test to be applied is whether or not the accused has shown by clear evidence that 'he may and probably will be drawn into a trial by a jury who, under an influence of which they may themselves be hardly conscious—an influence which, perhaps, no human sagacity can detect—may pronounce a verdict against him and conclude his rights forever'." 133 N.Y.S. at 308.

■ There is no doubt that some of the published articles were inflammatory. The learned trial judge, however, had the feel of the case and was well able to determine the issue presented by this assignment. An order granting or denying a motion for change of venue lies wholly within the discretion of the trial court. State v. Robinson, 89 Ariz. 224, 360 P.2d 474 (1961). The ruling on such a motion will not be disturbed on appeal in the absence of showing an abuse of such discretion. For as was stated in the Robinson case, supra:

" * * * Whether the application (for a change of venue) should have been granted is largely a matter of discretion of the trial court which we will not disturb unless it clearly appears that such discretion was abused. * *" 89 Ariz. at 226, 360 P.2d at 476.

Defendant argues that sufficient community prejudice existed in this case to make a denial of his motion for change of venue an abuse of discretion. As support for this argument he cites the copious publicity given the case in the Arizona Daily Sun and the number of veniremen rejected before a trial jury was finally impaneled.

■ These factors must, of course, be considered by the trial court in reaching his decision on the motion. In the instant case, the motion was quite extensively argued by both defendant and the State. Furthermore, the record discloses that exhaustive care was taken in the selection of an unbiased jury. In view of these facts, the order denying the motion for change of venue cannot be considered an abuse of the trial court's discretion.

The defendant's fourth assignment of error is that the trial court erred in denying defendant's challenge to the panel upon the ground that it was not a legally constituted panel. Defendant filed a written challenge to the panel of jurors upon the ground that the jurors were not selected or drawn ac-

cording to law.[4] On November 12, the court ordered that a trial jury be drawn and be in attendance on November 30. However, the order containing the jury list stated that the jurors were to appear in attendance on December 7, one week later than the time stated in the court's order and more than twenty days after the entry of the court's order. Defendant contends that as the panel called for the jurors to appear and be in attendance at court on a date different than that stated in the court order, the panel was not a legally constituted panel and it was as though defendant did not have a jury.

▇▇▇▇ This contention is not well founded. A judgment of conviction will not be reversed for disregarding formal provisions of the law regarding the manner and selection of juries if a fair and impartial jury was secured. State v. Miller, 71 Ariz. 140, 224 P.2d 205 (1950); Conner v. State, 54 Ariz. 68, 92 P.2d 524 (1939). Defendant offered no showing that his rights were prejudiced due to this technical discrepancy.[5]

▇▇▇▇ The same principle applies to appellant's proposition that the jury list was improperly prepared, the prospective jurors names having been drawn from the list of registered voters in the county. At the time the challenge to the panel was made, the applicable law, beginning with Lawrence v. State, 29 Ariz. 247, 240 P. 863 (1925) was that while there is error in denying the challenge on these grounds, such error is not fatal unless prejudice can be shown. This same rule was announced in the case of State v. Little, 87 Ariz. 295, 350 P.2d 756 (1960), wherein this Court condemned the failure to comply with the statutory methods for making jury lists, but did not hold that such failure was, *ipso facto,* prejudicial error stating:

> " * * * the defendant has made no showing whereby he was or, indeed, may have been prejudiced in any way by the preparation of the jury list, and

4. " * * * A challenge to the panel may be made only on the ground that the jurors were not selected or drawn according to law. * * * " Ariz.Rules of Crim. Proc., Rule 213.

5. It should be noted that this problem now complained of by defendant would not arise under A.R.S. § 21–312 as amended in 1961. Laws 1961, Ch. 10 § 2. The upper time limit of twenty days has been omitted from the statute. The old statute read:

 " * * * Not less than ten nor more than twenty days before the time at which either a grand or trial jury is required to be in attendance upon the superior court, the judge thereof shall make and file * * * an order that the jury be drawn. * * * "

 The pertinent part of the amended statute reads:

 " * * * Not less than ten days before the time at which either a grand or trial jury is required to be in attendance upon the superior court, the judge thereof shall make and file * * * an order that the jury be drawn. * * * "

we consider the decision in Midkiff v. State * * * authority for holding this assignment to be without merit." 87 Ariz. at 300, 350 P.2d at 759.

Since defendant has failed to show prejudice from the denial of the challenge, his argument must fail.

Defendant's fifth assignment of error is in substance that the conviction cannot stand because defendant was convicted on the uncorroborated testimony of an accomplice. Defendant cites State v. Colvin, 81 Ariz. 388, 307 P.2d 98 (1957) in support of such proposition wherein it was stated:

> " * * * a conviction cannot be obtained on the testimony of an accomplice unless the same is corroborated by other evidence which, in itself and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense. * * *" 81 Ariz. at 395, 307 P.2d at 103.

■ It is well established that the uncorroborated testimony of an accomplice is insufficient to sustain a conviction. State v. Colvin, supra. The evidence necessary to corroborate the testimony of an accomplice is that which, in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense.[6] It need not be sufficient to establish his guilt, for, in that event the testimony of the accomplice would not be needed. State v. Thomas, 79 Ariz. 355, 290 P.2d 470 (1955).

■ Defendant contends that no such evidence was introduced in this case. With this we cannot agree. An analysis of the evidence shows that the testimony of Mrs. Fain is very strongly and quite convincingly corroborated by the defendant himself. The admission of defendant as disclosed by the tape recording of the interview with him in California admitted into evidence, and the defendant's own testimony provide ample corroboration.

■ Defendant further contends that there is no evidence of premeditation and deliberation or of robbery to support a verdict of first degree murder. The record, however, fully substantiates the jury's finding under the instructions given by the trial court of either premeditation and deliberation or robbery. For, as stated in May v. State, 232 Ind. 523, 526, 112 N.E.2d 439, 440 (1953): " * * * the formation of the intention to kill and the killing may be as instantaneous as successive thoughts." Taking the finding of the jury in the light of the record as a whole, there was no error.

The defendant's sixth assignment of error is that the court erred in failing to

6. A.R.S. § 13-136 (1956).

instruct the jury that they were to determine if the defendant's confession, which was admitted by the court, was voluntarily made and if, considering all of the circumstances connected with the making of the confession, it was true. Defendant contends that the state offered into evidence a confession of the defendant without first laying a foundation and that the trial court failed to give the proper instruction concerning the confession. In State v. Romo, 66 Ariz. 174, 185 P.2d 757 (1947) this Court defined a confession as "an acknowledgment of guilt after commission of an offense leaving nothing to be decided." This definition, according to the Romo case, does not apply to a mere statement or declaration of independent facts from which guilt may be inferred. See also State v. McDaniel, 80 Ariz. 381, 298 P.2d 798 (1956); State v. Robinson, supra. If the statement cannot be taken as a confession, it is merely an admission against interest, and no instruction as to voluntariness need be given. Lawrence v. State, supra; State v. McDaniel, supra; State v. Robinson, supra.

 In the instant case, what the defendant calls a confession is actually an admission against interest. A review of the evidence shows that rather than acknowledging his guilt, defendant was attempting to exculpate himself by showing justification for his act. In one statement he says that he grabbed the knife and went back after he heard Mrs. Fain "holler", apparently with intent to protect her. In another, he states that the deceased had a knife in his hand, apparently attempting to raise self defense. Furthermore, the statement was not referred to during the course of the trial as a confession by either party in the case. The statement does not meet the requirements of a confession. For this reason the failure to instruct as to voluntariness and weight was in no way error on the part of the court.

Defendant's last assignment of error is that the trial court erred in denying the defense motion for a new trial predicated on the proposition that the verdict of guilty, and imposition of the death penalty was contrary to the weight of the evidence in the case in that, the circumstances surrounding the homicide were not of such gravity or severity as to warrant the infliction of the death penalty and the jury abused its discretion in fixing the punishment at death.

 We believe this assignment to be without merit. A.R.S. § 13–453 (1956) provides:

"* * * A person guilty of murder in the first degree shall suffer death or imprisonment in the state prison for life, at the discretion of the jury trying the person charged therewith, * *."

The determination of punishment is wholly within the discretion of the jury upon their

consideration of all aspects of the case. Unless the record clearly shows an abuse of discretion the verdict of the jury must stand. State v. Robinson, supra; State v. Fenton, 86 Ariz. 111, 341 P.2d 237 (1959); Hernandez v. State, 43 Ariz. 424, 32 P.2d 18 (1934). After a review of the record it does not appear that the jury abused its discretion. This Court will therefore not upset their verdict.

The judgment of the lower court is affirmed.

BERNSTEIN, C. J., UDALL, V. C. J., and STRUCKMEYER and LOCKWOOD, JJ., concur.